LEVINESS. The JOSHUA. See Case No. 7,549.

---

## Case No. 8,292.

LEVINSON v. OCEANIC STEAM NAV. CO.

[24 Int. Rev. Rec. 122; 17 Alb. Law J. 285.]

Circuit Court, S. D. New York. Jan. 25, 1876.

LIABILITY OF SHIP OWNERS — STATUTE OF 1851 — EXTENT—FOREIGN VESSELS—SERVICE OF PROCESS—POWER OF CONGRESS.

1. The United States statute of 1851 (9 Stat. 635), limiting the liability of ship owners to their interest in the vessel, and her freight, is applicable

---

[2] [From 14 N. B. R. 385.]

to foreign vessels. It is a regulation of commerce, and not a municipal regulation.
[Cited in Thomassen v. Whitwell, Case No. 13,-930.]

2. Congress has power to authorize the supreme court to fix by rule the manner of serving process. A rule providing for service of process upon an attorney is valid, and jurisdiction of his client can be thus acquired.

[Appeal from the district court of the United States for the Southern district of New York.]
In admiralty.

E. F. Shepard and E. Coffin, Jr., for plaintiff.
Everett P. Wheeler and Charles E. Souther, for defendant.

SHIPMAN, District Judge. The case now before the court stands in this position: The plaintiff, a resident of the state of New York, and of the Southern district of New York, brought his action in this court against a common carrier by sea (having its domicile in a foreign country), to recover damages for personal injuries to him while a passenger and for the loss of his baggage. The plaintiff has made out his prima facie case. The defendants pleaded in bar a decree of the district court of the Southern district of New York, and have offered in evidence the libel, the appraisement by the commissioners, the monition after the appraisement, the payment into court of the amount of the appraisement, and the final decree. The defendants then rested their case. The plaintiff thereupon moved for a direction to the jury to find for the plaintiff, on the ground that the defence is insufficient in law. The question is, whether the decree of the district court is a bar to the action of the plaintiff. That decree was based upon the statute passed by congress in 1851, the first and third sections of which are as follows:

"Sec. 1. No owner or owners of any ship or vessel shall be subject or liable to answer for or make good to any one or more person or persons any loss or damage which may happen to any goods or merchandise whatsoever, which shall be shipped, taken in or put on board any such ship or vessel, by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners; provided that nothing in this act contained shall prevent the parties from making such contract as they please, extending or limiting the liability of ship owners."

"Sec. 3. The liability of the owner or owners of any ship or vessel for any embezzlement, loss or destruction by the master, officers, mariners, passengers or any other person or persons, of any property, goods or merchandise shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture,

done, occasioned or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel and her freight then pending." 9 Stat. 635.

The motion of plaintiffs for a direction to the jury notwithstanding the decree of the district court is founded substantially upon two points: First, that the district court never had jurisdiction of the subject matter of the libel; and, second, it had no jurisdiction of the person who is now plaintiff in this suit, and who was named as one of the defendants in that libel.

All the objections resolve themselves into these two questions, whether the district court had jurisdiction of the subject matter or jurisdiction of the person. This statute of 1851 has been discussed at length· by the counsel. It seems to me to have been a limitation of the common law liability of common carriers by sea. It is well understood that at common law there was no limitation upon the liabilities of such common carriers, but that the amount which they were liable to pay was limited only by the judgments which might be rendered against them. Congress, in 1851, saw fit by statute to limit that liability, and the statute seems to have been a modification or alteration of the common law in regard to the extent of liability of ship owners for the negligence of their officers and crew. Congress also saw fit to adopt the same limitation which had previously existed in the several maritime countries of Europe. The statute which was passed was the adoption by legislative authority of a new principle of law so far as this country is concerned, but one which has been the rule in the admiralty courts of foreign countries.

The question, then, is whether this limitation of the liability of common carriers by sea applies only to American vessels, and was merely a municipal regulation, or whether it was the adoption of a general principle. Now, neither from the language of the statute of 1851, nor upon principle, can I see that this limitation of liability was local, or that the legislation was municipal. There was nothing local or municipal in its character. The statute was not in terms confined to American vessels. It had a wider scope and was a modification by legislative enactment of the ·common law, in regard to a subject over which congress had jurisdiction. If a modification of the common law liabilities of carriers by land was provided by the statute of the state, which had jurisdiction over such corporations, it would have been binding upon all courts of the state; it would have been the lex fori, the modification would have been a general one, and when an action was brought before a court of the state. the court would have been prohibited from exceeding the liabilities which the legislature of the state had limited. So,

this statute being a modification of the common law of a general and universal character, it is binding upon all courts in this country, and they are limited or restrained from proceeding to give judgment beyond the limit of liability, which the legislature had prescribed in 1851. In other words, the adoption of a principle of admiralty law cannot be considered as merely local or municipal legislation.

Second. Whether the district court had jurisdiction of the person, is next to be considered. At common law personal service, or its equivalent, is in all cases to be made upon the defendant, so that he may have an opportunity to appear and make defence. The common law prescribes that ' " . . . personal service is in all cases necessary to enable the court to acquire jurisdiction, unless some other mode of service is authorized by the laws of the state." This action in admiralty was both a proceeding in rem., and a proceeding in personam. In so far as it is a proceeding in personam, the principles of common law in regard to actions in personam are applicable; that is, that personal service of process or that service which is authorized by statute as an equivalent, is to be made upon the party who is to be affected by the judgment that may be rendered in the suit. In this admiralty proceeding the supreme court has announced the rules which are applicable to the service, and the rule of the supreme court corresponds to and has the same effect as the rules prescribed by the statutes as to common law service. The statute of 1851 (section 4) provides that the owner "may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner of the vessel may be liable among the parties entitled thereto." It announced no rule by which service shall be made.

The supreme court has jurisdiction of the rules which govern the proceeding. The general rule of the supreme court adopted in 1871 (13 Wall. [80 U. S.] xiii.) provides that "public notice of such monition shall be given as in other cases. and such further notice served through the post office or otherwise, as the court in its discretion may direct." They point out one method of service: through the post office. That is not, strictly speaking, personal service;· it is merely constructive. One mode of constructive service then is designated. and they declare that the district court, in its discretion, may direct how such other and further notice may be given as it chooses. The rule does not say "such further notice shall be served through the post office, and otherwise;" ·but it is optional with the district court whether notice shall be served on the known claimants through the post office or otherwise in the exercise of its judgment. The supreme court provides an equivalent for personal service, and has in effect declared that constructive service shall be sufficient. In other. words,

they direct that the district court may elect, in its discretion, whether one or another mode of constructive service may be adopted, and have not limited them to personal service. The district court, in its discretion, selected one mode of constructive notice, and that was by service upon the attorneys for the claimants, and it was not necessary that service upon them should be made otherwise than by delivering a copy of the monition to their attorneys. It is not material, in my judgment, whether the attorneys admitted or did not admit service, for the important question is whether the service which the court directed to be made on the defendant was sufficient service or not. If the rule had provided that "such other notice shall be served through the post office, or actually served upon the defendants," and the monition has not been served, either by mail or personally, the district court would have had no jurisdiction. But the rule having left the method of service to the discretion of the court, which had the jurisdiction of the libel, and the court, having exercised its discretion, and determined what, in its judgment, should be a valid constructive service to bring the defendant into court, and service having been made accordingly, no valid objection can be taken to the jurisdiction of the court over the action in personam. The motion to direct a verdict for the plaintiff is denied. The court, at the conclusion of the evidence, directed a verdict for the defendant. Judgment was entered on the verdict. No writ of error has been brought to review this judgment.