IN RE WARD PROUTY'S ESTATE.

January Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed February 6, 1929.

*C. Menzies Miller* and *Shields & Conant* for the contestant.

*Porter, Witters & Longmore* for the proponent.

SLACK, J. From a decree of the probate court for the probate district of Orleans, allowing as such an instrument purporting to be the last will and testament of Ward Prouty late of Newport, Vermont, deceased, the Hadley Falls Trust Company, a Massachusetts corporation, as guardian for Charles Tyler Prouty, a minor son of the testator then residing in Springfield, Massachusetts, prayed for an appeal, and upon its filing in the probate court the required bond conditioned to prosecute its appeal to effect, etc., as the law directs, its prayer was granted.

and the appeal was duly entered in the Orleans county court. There the proponent moved to dismiss such appeal on the ground that it did not appear that the appellant was a citizen or resident of this State, or that it had been appointed or qualified as guardian of the said Charles Tyler Prouty by any probate court in this State; the motion was granted, and the appellant excepted.

The sole question for review is whether a foreign guardian can maintain proceedings of this character in the courts of this State. If by this is meant whether he can do so *de jure*, the question must be answered in the negative. Such is the law in all common-law jurisdictions. Story on Conflict of Laws (Rev. ed.) §§ 499, 504, 504a; Wharton on Conflict of Laws (3rd ed.) §§ 260, 260b; *Morgan* v. *Potter,* 157 U. S. 195, 39 L. ed. 670, 15 Sup. Ct. 590; *Lamar* v. *Micou,* 112 U. S. 452, 470, 28 L. ed. 751, 5 Sup. Ct. 221; *Hoyt* v. *Sprague,* 103 U. S. 613, 631, 26 L. ed. 585; *Woodworth* v. *Spring,* 4 Allen (Mass.) 321; *Banning, Exr.* v. *Gotshall,* 62 Ohio St. 210, 56 N. E. 1030; *Earl, Guar.* v. *Dresser, Guar.,* 30 Ind. 11, 95 A. D. 660; *Fenner* v. *McCan et al.,* 21 So. 768; *McLoskey* v. *Reid,* 4 Bradf. Sur. (N. Y.) 334; *Townsend* v. *Kendall,* 4 Minn. 412 (Gil. 315), 77 · A. D. 734; *Leonard* v. *Putnam,* 51 N. H. 247, 12 A. R. 106; *In re Crosswell's Petition,* 28 R. I. 137, 66 Atl. 55, 13 Ann. Cas. 874. To the same effect, although involving the rights and powers of foreign executors and administrators instead of guardians, are *Purple* v. *Whithed,* 49 Vt. 187, and *Church's Exr.* v. *Church's Estate,* 78 Vt. 360, 63 Atl. 228.

But this strict rule of law is much modified in its practical operation of the exercise of the comity which exists between civilized countries, and particularly between the several states of this country. Mr. Wharton in his work above referred to at section 260 says: "But while the authority *de jure* of a guardian is local to the state or country of his appointment, it may be extended to other states or countries by the comity of the latter, declared by their legislatures or courts." This rule is recognized in most of the cases cited above, although not followed by all of them. In *Lamar* v. *Micou, supra,* the court takes occasion to observe that, the tendency of modern statutes and decisions is to defer to the law of the domicil, and to support the authority of the guardian appointed there.

The comity of Massachusetts respecting foreign guardian is declared in *Woodworth* v. *Spring, supra*. That was a petition for *habeas corpus* brought by the guardian of a minor appointed in Illinois, the domicil of the ward, against a guardian appointed in Massachusetts, where the ward was lawfully staying at the time. The respondent claimed that the Illinois guardianship could have no such effect or operation in Massachusetts as to entitle the petitioner to the custody of his ward. Bigelow, C. J., speaking for the court said, among other things: ''So far, therefore, as the claim of the petitioner to the custody of the child in the present case rests on a supposed rightful authority to control his person in this commonwealth, by virtue of his appointment as guardian in the State of Illinois, it is not supported either on principle or authority. He cannot assert his tutorial powers, *de jure,* in our courts or within our territory. But it by no means follows that his claim to the care of the child and the control of his person, and to the privilege of removing him from this commonwealth, is to be absolutely denied. On the contrary, it is the duty of the courts of this state, in the exercise of that comity which recognizes the laws of other states when they are consistent with and in harmony with our own, to consider the *status* of guardian which the petitioner holds under the laws of another state as an important element in determining with whom the custody of the child is to continue. It would not do to say that a foreign guardian has no claim to the care or control of the person of his ward in this commonwealth. * * * * * * His appointment in another state as guardian of an infant, with powers and duties similar to those which are by our laws vested in guardians over the persons of their wards, would entitle him to ask that the comity of friendly states having similar laws and usages should be so far recognized and exerted as to surrender to him the infant, so that he might be again restored to his full rights and powers over him, by removing him to the place of his domicil. And if it should appear that such surrender and restoration would not debar the infant from any personal rights or privileges to which he might be entitled under our laws, and would be conducive to his welfare and promote his interests, it would be the duty of the court to award to the foreign guardian the custody of the person. * * * * * * * It is for this court to determine, in the exercise of a sound judicial discretion, having regard to the welfare and

permanent good of the child as a predominant consideration, to whose custody he shall be committed.''

Another case much in point is *Earl, Guar.* v. *Dresser, Guar., supra.* Dresser who was appointed guardian of his minor son, by a probate court in Michigan where they both resided, brought a petition against Earl in the court of common pleas in Indiana, alleging that Earl had been appointed guardian of the ward in that state, and as such had in his hands money that belonged to the ward and praying for an accounting and that the money be paid to the petitioner. Earl demurred to the petition for want of sufficient facts; the demurrer was overruled and the order prayed for was granted. It was claimed on appeal that the petition treated the right of Dresser to recover the fund as one *stricti juris,* and inherent to him as a foreign guardian. Speaking to this point the court said: ''Without deciding that the objection, if true, would necessarily render the petition bad on demurrer, it is sufficient to say that we do not regard it as asserting such an absolute right. It is not a complaint in the usual form against Earl as a defendant, nor does it demand judgment against him as in an ordinary adversary suit on a money demand.'' Following a recital of the facts alleged in the petition, and a discussion of the law respecting the rights and powers of foreign guardians the court concluded that Dresser could not, by virtue of his appointment in Michigan, claim to recover the money in the hands of the resident guardian, as a *legal right;* but it says: ''The question here is one involving the doctrine of national comity, growing out of the conflict of independent jurisdictions. It is a question addressed to the sound judicial discretion of the court, to be determined upon principles of comity, equity and justice. If it appeared, from the facts of the case, that any principle of public policy would be violated, or that the legal rights of any of our own citizens would be injured or impaired by the transmission of the fund to the foreign guardian, it would undoubtedly be right to retain them here. But it does not appear that any such consequences would result from its transmission. * * * * * * * Under such circumstances, it seems evident that the best interests of the ward, as well as the principles of justice and fair comity, demand that the fund should be paid over to the foreign guardian.'' And the order of the lower court to that effect was affirmed.

■ With us the question of comity in proceedings of this nature is an open one, since it does not appear to have been raised in either of our cases above cited, or in any other so far as we are aware, neither has the Legislature declared it. The instant case does not require us to decide, nor do we, to what extent the common law respecting the rights and powers of foreign guardians, in general, should yield to comity, but we think, and hold, that in these and like proceedings, when it appears to the court that the welfare of. the ward demands it, and that the interests of our own citizens will not be adversely affected thereby, it may, in the exercise of a sound judicial discretion, recognize such a guardian to the extent that recognition was here necessary. Had this ward been of full age, the doors of our courts would have been open to him for the purpose for which the guardian is here, though he came from the uttermost part of the earth. Why should they be closed against his guardian, appointed in another jurisdiction to be sure, who appears for the sole purpose of challenging the validity of the will in question, and who, we assume, satisfied the court of his appointment and power to act, and complied with all the requirements necessary to perfect its appeal? For no reason, except to indulge a mere technicality which ought not to prevail in the circumstance of this case.

■■ It is urged in argument that our probate courts have no authority to declare the comity of the State. By G. L. 3177 those courts are given jurisdiction of the probate of wills, the settlement of estates, the appointment of guardians, etc. Over those matters they have .exclusive jurisdiction, in the first instance. *Boyden* v. *Ward,* 38 Vt. 628; *Probate Court* v. *Slason,* 23 Vt. 306. So long as the case remained in the probate court, that court alone could recognize this guardian. When the case reached the county court, that court sitting as a high-court of probate (G. L. 3453) had the same authority and powers in all matters involved, including the guardianship, that the probate court had originally. *Maughan* v. *Estate of Burns,* 64 Vt. 316, 23 Atl. 583; *Adams* v. *Adams,* 21 Vt. 162; *In re Welch's Will,* 69 Vt. 127, 37 Atl. 250. It might, in the exercise of a sound judicial discretion, permit this guardian to prosecute the appeal subject to such orders, of course, as it deemed expedient, or it might appoint someone else to represent the ward in these proceedings; but it could not deprive the ward, who is the real

party in interest, of the benefit of the appeal altogether. Had the probate court been without authority to recognize this guardian, the situation would have been different, but since we hold that it had such authority, if it chose to exercise it, the appeal was valid.

It is claimed that, since the authority of this guardian is such only as was vested in it by virtue of its appointment in another state, it is not an interested person within the meaning of G. L. 3455. What has been said disposes of this question.

*Reversed and remanded.*

CHASE, J., having resigned, took no part in this decision.