[Civil No. 3474. Filed January 14, 1935.]

[40 Pac. (2d) 86.]

LODELLE V. CUBBISON, Appellant, v. WALTER M. CUBBISON, Appellee.

Mr. Raymond H. Alexander, for Appellant.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellee.

LOCKWOOD, C. J.—■■■ This is an appeal from an order denying a motion to vacate a judgment, and from the judgment itself. In order that the situation and the legal questions involved may be understood, ·we think it best that we first state the facts. Both counsel for plaintiff and defendant have in their briefs referred to many alleged facts which do not appear in the record; but· we, of course, cannot consider these, and since no reporter's transcript was brought up, and the record is apparently incomplete otherwise, our statement of facts is based, as it must be, solely on the pleadings, exhibits, and minutes of the trial court, which are properly before us. From this record it appears that Walter M. Cubbison, hereinafter called plaintiff, brought suit for divorce against Lodelle V. Cubbison, hereinafter called defendant. The complaint set up in substance that they had been married for some twenty-three years and had lived within the jurisdiction of the trial court from the 1st day of June, 1927, to the 1st day of December, 1932; but that thereafter, while plaintiff continued to reside in Phoenix, defendant took up her residence in Ohio. There was a further allegation that there were no children living of the marriage, and that ''said plaintiff and defendant have during the said period of their married life accumulated the following described property'' setting up an interest in certain real estate, two paid-up building and loan certificates, and various miscellaneous personal property. It was also alleged that all of said property was purchased with compensation which the plaintiff

had received as the result of an accident which occurred to him during coverture. Then followed an allegation of cruelty involving various acts and the usual prayer for divorce and a proper distribution of the community property.

Summons was issued on January 19, 1933, and a restraining order was granted on the same day, prohibiting defendant from disposing of any of the personal property described in the complaint.

The next thing which appears in the record is an insanity complaint against defendant, signed by plaintiff, and an order of the superior court of Maricopa county, adjudging defendant to be insane, and committing her to the state hospital. Some five days later, and on February 13th, an affidavit of service of summons on defendant by registered mail was made and filed; the registry return receipt showing that she had received the summons in Ohio on January 31st.

We next find a stipulation, signed by the attorneys for the plaintiff and by another local member of the bar, as attorney for the defendant. This stipulation was dated March 25, 1933, and filed March 27th. It provided that all proceedings in the divorce case would be suspended for a period of four months, after which the defendant might answer, or in failure of an answer the plaintiff might have, upon three days' notice to defendant, a default entered and proceed with the trial of the case. There were further stipulations in regard to the payment of certain moneys from the plaintiff to the defendant, and the property rights of the parties were to be held *in status quo* during the pendency of the stipulation, and any amount paid by plaintiff to defendant under the stipulation was to be taken into consideration in a final settlement of property rights. Subdivision 5, rule 5 of the Uniform Rules for the Superior Court

in force at that time, provided as follows: "(5) In all cases of divorce the attorneys appearing for a defendant who has not been personally served shall by affidavit show their authority to act for such defendant." Service by registered mail is not personal service. *Levinson* v. *Oceanic Steam Nav. Co.*, 15 Fed. Cas. 422, No. 8292; *Bernath* v. *Kolosky et al.*, 82 Okl. 190, 200 Pac. 147. No affidavit such as is required by this rule appears in the record, nor is there anything to show what authority the attorney had to appear for the defendant in making the stipulation above referred to, so we cannot consider it as of any effect in the case.

The next thing in the record is another complaint in lunacy against the defendant, signed by plaintiff, and filed June 7th. This was heard before another judge of the superior court from the one who heard the first complaint, and was dismissed.

On July 11th the record shows that plaintiff appeared with his counsel, defendant not being represented, and her default for failure to answer was duly entered, and evidence being heard by the court, an order for judgment in favor of plaintiff was made. On July 31st a formal written judgment having been presented to the trial judge in accordance with the Uniform Rules, judgment was rendered in favor of plaintiff, granting him a divorce and awarding him all of the property referred to in the complaint.

On August 12th R. H. Alexander appeared before a third judge of the superior court, in the capacity of *amicus curiae,* and moved the restoration of defendant to competency, representing that she had been adjudged insane on February 8th and committed to the state hospital, but that she had been discharged from said hospital by the authorities thereof on March 18th as being sane; but there is nothing in the

record except his unverified motion to show the alleged discharge. Defendant also appeared in person before the court for examination as to her sanity, and an order was made by this judge finding defendant sane and restoring her to competency. Thereafter she personally filed a motion to set aside the judgment in which she set up (a) that there had never been any proper service of summons; (b) that the time for answer to the summons had not expired for the reason that before thirty days from its service had elapsed she had been adjudged insane and that she had not been restored to competency until after default had been entered and the judgment rendered; (c) that she was not represented at the trial of the case; (d) that she was never given the three days' notice in regard to the entry of default, as required by the stipulation on file; (e) that the property adjudged to plaintiff was, as a matter of law, community property and could not therefore be given him; and (f) that the acts of cruelty set up in the complaint occurred when or immediately before she was adjudged insane. This motion was supported by affidavit. The matter was heard before the judge who heard both the divorce proceedings and the original insanity complaint, and the motion was denied, after which this appeal was taken.

From what we have previously said, grounds (a) and (d) of the motion are not good. The theory of defendant on the remaining grounds apparently may be stated as follows: (1) That before the time for answer to the original complaint expired she was legally adjudged insane, and not restored to competency until after the judgment had been rendered; that under the law an insane person can only appear through either a general guardian or a guardian *ad litem;* and that all proceedings taken against her

during the period of her insanity are, if not void, at least voidable. (2) That the acts of cruelty alleged occurred at such a time that they are not grounds for divorce. (3) That under the allegations of plaintiff himself all of the property of the parties described in the complaint was community, and that it was therefore error to award the same *in toto* to the plaintiff.

We consider first the question of insanity. It is, of course, the general rule that although an insane person may sue or be sued, his incapacity requires that he be protected, and to that end he should be represented by someone who may adequately enforce or protect his rights. Usually such representation must be either through a general guardian or a guardian *ad litem,* and it is reversible error to enter a decree or judgment against an insane person not properly represented, unless it appears that such lack of representation was harmless. The record fails to show that defendant was during any of the proceedings from February 8th to August 12th represented by any person legally qualified to act for her. There is no evidence of the appointment of a guardian, and under subdivision 5 of rule 5, *supra,* since she was not personally served by summons, no attorney could appear for her, sane or insane, without first by affidavit showing his authority to act for her. If, therefore, defendant was in the eyes of the law insane from February 8th until August 12th, the date of the order restoring her to competency, we think the trial court erred in denying motion to vacate the judgment.

Let us consider whether the record shows that during any of that period she was sane. The order of February 8th adjudging her to be insane was made under the provisions of chapter 35, Re-

vised Code of Arizona 1928 (section 1769 et seq.). This chapter, in substance, provides that when a complaint is made before a judge of the superior court that any person by reason of insanity is dangerous to be left at large, he shall, in the manner provided by the statute, investigate the charge, and if he finds such party be insane and dangerous, either to himself or others, shall commit him to the state hospital, and he shall be confined therein and not discharged until sufficiently restored to reason.

Chapter 35, *supra,* as well as article 17 of chapter 88, Revised Code of Arizona 1928 (section 4107 et seq.), dealing with guardianship of minors and incompetents, were taken from California, and section 2935, Revised Code of Arizona 1928, providing for the parole and discharge of patients from the state hospital for the insane, although different in language, in substance is the same as the statute in California; both statutes authorizing the authorities having charge of such institutions to discharge any inmate when, in their opinion, he is or has become sane. The question has arisen in California as to the effect of a commitment to a state hospital under proceedings similar to those found in chapter 35, *supra,* and in that state it is held that proceedings under the Code provisions from which article 17, chapter 88, *supra,* is taken, against insane and other mentally incompetent persons for the purpose of placing them under guardianship, are entirely distinct from proceedings for commitment to the state hospital under chapter 35, *supra.* The proceedings for restoration to competency found in article 17, chapter 88, *supra,* do not apply to persons committed to the state asylum, and only the courts, acting through *habeas corpus,* and the authorities of the asylum may discharge an inmate thereof. The effect of a dis-

charge in either of such manners *ipso facto* restores the person discharged to legal capacity to sue and be sued. *Kellogg* v. *Cochran,* 87 Cal. 192, 25 Pac. 677, 12 L. R. A. 104; *People* v. *Willard,* 150 Cal. 543, 89 Pac. 124. The order restoring to competency made by the superior court on August 12th was therefore without jurisdiction and void. So far as the record shows, and we are of course bound by that, defendant has never been legally discharged from the commitment made February 8th. While a commitment of this nature is not conclusive as to the insanity of a person in the manner that an adjudication of incompetency under article 17, chapter 88, *supra,* would be, we think it is at least *prima facie* evidence to that effect and raises a presumption of insanity which continues until it is rebutted in some manner by the party claiming the person so committed is sane. On July 11th and 31st, when the divorce trial was held and when the judgment therein was rendered, the presumption is that defendant was then insane and not represented in any manner in the proceedings. Such being the case, no judgment could properly be rendered against her, and it was error for the trial court to refuse to vacate the judgment at defendant's request. It may be contended that if defendant was presumed to be still insane on August 12th, because nothing appears in the record to show that she has become sane since February 8th, she was without power to appear even for the purpose of requesting that the judgment against her be vacated. The courts have the inherent right, and they are duty bound, to protect the rights of insane litigants. Since, so far as the record shows, a judgment was rendered against defendant while she was presumptively insane, we think it was the imperative duty of the court, as soon as the matter was in any way called to its attention,

to see that defendant was given what the record shows she did not have, a trial in which she was properly represented.

It may be that there exist facts, not shown by the record, which would establish that defendant's rights have been fully protected; but we are bound by the record as it is, and not as it should be.

The order appealed from is reversed and the case remanded, with instructions to vacate the judgment of July 31, 1933, and to grant defendant a reasonable time to answer the complaint herein, and for further proceedings not inconsistent with this opinion.

McALISTER and ROSS, JJ., concur.