MATILDA BAKER, Appellant, *v.* HARRY BAKER, Respondent.

No. 3249

March 4, 1939. 87 P.(2d) 800.

*William M. Kearney* and *Robert Taylor Adams,* for Respondent:

*R. K. Wittenberg*, for Appellant:

## OPINION

By the Court, TABER, C. J.:

On June 4, 1937, respondent, as plaintiff, commenced an action for divorce against appellant in the Second judicial district court, Washoe County. The complaint alleged two causes for divorce, extreme cruelty, and insanity existing for two years prior to the commencement of the action. A week later, one June 11, summons and certified copy of complaint were served on defendant at the Fairview Sanitarium in Chicago. Upon plaintiff's application the court, on July 2,

appointed attorney John Davidson guardian ad litem, and authorized him to appear in and defend said action in behalf of the defendant.

On July 7 Benjamin Cornbleet, defendant's brother, to whom letters of conservatorship had been issued on May 5 by the probate court of Cook County, Illinois, noticed a motion for an order revoking the appointment of said guardian ad litem and filed a petition praying that he be appointed such guardian ad litem. At the hearing of said motion on July 13, it was shown that Mr. Davidson was associated with the plaintiff's attorney and frequently looked up law for him; that they occupied adjoining offices; that plaintiff's attorney paid Mr. Davidson's office rent; that they were not partners; that one reception room was used in common for their respective offices, and that Mr. Davidson paid no rent for this room; that he had many cases of his own; that plaintiff's attorney sometimes turned cases over to him and gave him certain office work. At said hearing plaintiff's attorney stated that he welcomed the general conservator to come into the case, and consented to his appearing and filing an answer therein.

The court denied the motion to remove the guardian ad litem, but gave leave to the general conservator to appear in the action and file a demurrer. The general conservator, in behalf of defendant, filed a demurrer to the complaint and an answer thereto, and demanded a bill of particulars which was furnished by plaintiff—all without any objection on his part. It was also the conservator, not the guardian ad litem, who, in behalf of defendant, moved for modifications and additions to the proposed findings of fact, moved for a new trial, and appealed to this court. From the time the trial court refused to remove Mr. Davidson as guardian ad litem until after the conservator noticed a motion in this court for allowances on appeal, neither plaintiff (respondent) nor the guardian ad litem made any objection to the conservator's appearing and acting in behalf of defendant. Plaintiff, however, did consistently object to the

removal of Mr. Davidson and to the appointment of Mr. Cornbleet to take his place as guardian ad litem.

The guardian ad litem did not file an answer to the complaint, or any other pleading, nor did he demand a bill of particulars, cross-examine any of plaintiff's witnesses, move for a new trial or take an appeal to this court. He did, however, write to the sanitarium in which defendant was confined, stipulate with plaintiff's attorney for the taking of the depositions of two physicians, secure an exemplified copy of the appointment of Benjamin Cornbleet as general conservator reciting that defendant had been adjudged an incompetent person suffering from dementia praecox, and make a report to the district court showing what he had done.

Plaintiff's notice that he would request the district court to set the action for trial, his later notice that the court had rendered its decision in favor of plaintiff and against defendant, and his notice that the conservator's motion for modifications and additions to proposed findings of fact had been set for hearing, were all addressed to the conservator and his attorney, as well as to defendant and the guardian ad litem. Plaintiff's notice that the court had denied the motion for new trial was addressed to "R. K. Wittenberg, attorney for the defendant, and to Benjamin Cornbleet, general guardian," but not to the guardian ad litem. It was through the conservator, not the guardian ad litem, that defendant, on July 28, 1938, was given additional time within which to file a bill of exceptions. The findings of fact and conclusions of law, and the decree of divorce, recite that "the defendant was represented by attorney John Davidson, Esq., appointed as guardian ad litem by the above entitled court, and also the defendant appeared through her general guardian Benjamin Cornbleet who was represented in court by attorney R. K. Wittenberg, Esq."

Respondent's motion to dismiss the appeal is based upon the ground "that the said Benjamin Cornbleet, as conservator of the defendant in the State of Illinois, is not a party to the above-entitled action but is a stranger

thereto; and that said Benjamin Cornbleet, as such conservator, has never qualified or been appointed in the State of Nevada, as a guardian of the person or estate of the said defendant, nor as guardian ad litem for said defendant by any order of court or otherwise, or at all, and that the said Benjamin Cornbleet is not, individually or as conservator of the person or estate of said defendant, under his appointment in the State of Illinois, a person aggrieved by the judgment appealed from; and that the above-entitled court is without jurisdiction to entertain the said appeal."

Sec. 8549 N. C. L. 1929 provides that: "When an infant, or an insane or incompetent person is a party, he must appear either by his general guardian or by a guardian ad litem appointed by the court in which the action is pending, in each case. A guardian ad litem may be appointed in any case, when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to represent the infant, insane, or incompetent person in the action or proceeding, notwithstanding he may have a general guardian and may have appeared by him."

The pertinent part of sec. 8550 N. C. L. 1929 reads: "When a guardian ad litem is appointed by the court, he must be appointed as follows: * * * 3. When an insane or incompetent person is a party to an action or proceeding, upon the application of a relative or friend of such insane or incompetent person, or of any other party to the action or proceeding."

There can be no question as to the right of the defendant to appeal. The main question is whether the appeal must be dismissed because Benjamin Cornbleet, the Illinois conservator who is prosecuting the appeal in behalf of defendant, has not been appointed either as general guardian or guardian ad litem by any court in Nevada.

In the case of In re Nickals, 21 Nev. 462, at page 465, 34 P. 250, at page 251, this court 'said: "Except as a matter of comity, and to a very limited

extent, guardians appointed in one state are not recognized as such, or as having any power or authority, in any other state." And we agree with respondent that the words "general guardian," as used in sec. 8549 N. C. L. 1929 refer only to a general guardian appointed by a Nevada court, whether such appointment be made under the provisions of secs. 9508, 9509, and 9510 N. C. L. 1929 or those of secs. 9533, 9534, and 9535 N. C. L. 1929. But the fact that the Illinois conservator, who has undertaken to prosecute this appeal in behalf of his sister, the defendant, has not been appointed either general guardian or guardian ad litem by any Nevada court, is not a fatal jurisdictional defect requiring dismissal of the appeal. Yarhola v. Duling, 86 Okl. 171, 207 P. 293; In re Prouty's Estate, 101 Vt. 496, 144 A. 691; St. Louis, I. M. & S. R. Co. v. Haist, 71 Ark. 258, 72 S. W. 893, 100 Am. St. Rep. 65; Hill v. Reed, 23 Okl. 616, 103 P. 855; Ward v. Lovell, 21 Tenn. App. 560, 113 S. W. (2d) 759; Home Life Ins. Co. v. Cohen, 278 Mich. 169, 270 N. W. 256; Kearney v. Doyle, 22 Mich. 294; Carlton v. Miller, 2 Tex. Civ. App. 619, 21 S. W. 697; Bancroft, Code Pr. and Rem., vol. 6, p. 6357, sec. 4849, notes 20, 2; Bancroft, Code Pl., Pr. and Rem., Ten Year Supp., vol. 4, p. 3520, sec. 4849; 4 C. J. S., Appeal and Error, sec. 1353, p. 1943, sec. 1365, page 1977, note 75; 10 Stand. Encyc. of Proc. 726, note 91; 10 Encyc. of Pl. and Pr. 1231, note 3.

Respondent points out that Mr. Cornbleet did not at any time apply to a Nevada court for appointment as general guardian of Matilda Baker, and suggests that if he had done so such court might well have granted his petition. There were two good reasons, however, for not pursuing such a course: (1) Mrs. Baker had no estate in Nevada; (2) she was not domiciled in Nevada. It is clear that it was more appropriate for Mr. Cornbleet to request the trial court to remove Mr. Davidson and appoint himself guardian ad litem.

Respondent's contention, that the appeal must be

dismissed because Benjamin Cornbleet is not a "party aggrieved" and has no appealable interest, cannot be sustained. Matilda Baker, not Benjamin Cornbleet, is the appellant, and she is a party aggrieved and has an appealable interest. Neither as an individual nor in his capacity as foreign conservator is Benjamin Cornbleet appellant in this case.

In re Pedroli's Estate, 44 Nev. 258, 193 P. 852, 853, cited by respondent, is not pertinent. In that case one Scott, who had been appointed and had qualified as administrator of the estate of Charles Pedroli, deceased, was, upon petition of deceased's widow, removed as such administrator. After a motion for a new trial had been denied, Scott appealed to this court. In doing so he appealed, not as an individual, but in his representative capacity. It was held that he could not, in such capacity, appeal from the order removing him as administrator. "This conviction," said the court, "is based upon the fact that he has ceased to be the administrator of the estate, could not control the litigation thereof and handle its affairs generally, and, in fact, has no appealable interest therein. * * * In what way was Scott affected by the removal? Solely to the extent of the compensation he might earn in the capacity of administrator. * * * So far as we are advised, the authorities are unanimous in holding that, where one has been removed as an administrator, his only right of appeal is as an individual. * * *" In the Pedroli case Scott, in his representative capacity, was the appellant. In the case at bar Cornbleet is not the appellant in *any* capacity.

Respondent also relies on the case of Power v. Lenoir, 22 Mont. 169, 56 P. 106, 109, in support of the proposition that, as Cornbleet has no standing in the Nevada courts, anything done by him in appellant's behalf in any of the courts of this state would not be binding on her, and this court is therefore without jurisdiction to entertain this appeal. In the Montana case, the father of certain minor children was appointed their general

guardian, but did not qualify by giving the statutory bond. Nevertheless he assumed to appear for them in an action wherein their interest in certain property devised to them by their mother was at stake, and in which they, with their father as general guardian, were made parties defendant. About three and a half years after the suit was commenced, the father, in his absence, was appointed guardian ad litem for his said minor children, and then final judgment was entered against them. The judgment of the district court was reversed. Speaking of the statute requiring a bond on qualifying, the court said: "But the great weight of authority sustains the view that the provisions of such statutes are mandatory, and that a neglect to comply with them renders void all acts of the guardian, insofar as they conclude the rights of the wards." Regarding the "nunc pro tunc" order appointing the father guardian ad litem, the court had this to say: "The court will, in its discretion, make any such order in favor of a minor not violative of established principles of law; but we have been unable to find any case in which the court indulges in any presumption against the minor. In the case under consideration the infants were sought to be devested of their title to the property in controversy. They were left without lawful defense or representation. This was due to the failure on the part of plaintiff's counsel and the court to see that they were represented. It was not for the court to say, after the trial was over, and when he was about to announce the judgment taking from them the property left them by their mother, that the father, whom he was also about to convict of fraud and wrongdoing, had given them the defense the case deserved and the real facts warranted."

■ ▪ Power v. Lenoir, supra, is but one of many cases showing the disposition of the courts to protect minors and incompetents, who are wards of the court, particularly when it is sought to divest them of any of their rights under the law. See Cubbison v. Cubbison, 45 Ariz. 14, 40 P. (2d) 86; In re Price, 61 Cal. App. 592,

215 P. 710; Carlton v. Miller, 2 Tex. Civ. App. 619, 21 S. W. 697. But there is nothing in any of these cases which would justify this court in dismissing the present appeal. So far as appears at this time, Benjamin Cornbleet is not seeking to divest appellant of any rights, but rather to protect her rights. The chief purpose of statutes such as sections 8549 and 8550 N. C. L. 1929 is to protect infants, insane persons, and incompetents. They are intended as a shield for the protection of such litigants, and should not be used as a sword for their injury. Carlton v. Miller, supra; Brooke v. Clark, 57 Tex. 105.

■■ This court is of the opinion that although the conservator has no standing, de jure, in the courts of this state, he should, for the protection of the appellant, on principles of comity, be recognized and accepted as the proper person to prosecute this appeal on her behalf. In re Prouty's Estate, supra; 12 R. C. L. 1174, sec. 65; Monographic Note, 89 Am. St. Rep. 273, 274; 15 C. J. 1181, sec. 655; 11 Am. Jur. p. 299, notes 12, 13, 16. In this connection it is to be remembered that he is appellant's brother (32 C. J. 774, sec. 596), and has thus far sought to actively protect her rights, apparently at his own expense. Furthermore, the district court permitted the conservator to act more as a guardian ad litem in fact that as a mere friend of the court. Ordinarily, at least, an amicus curiæ may not file a pleading. 3 C. J. S., Amicus Curiæ, sec. 3, p. 1050, notes 79, 80; 2 Am. Jur. 680, sec. 4, note 13. But in this case the conservator was not only permitted, without any objection, to file a demurrer and an answer to plaintiff's complaint, but to demand a bill of particulars (which was furnished him without objection), move for modifications of and additions to the proposed findings of fact, and move for a new trial. When plaintiff gave written notice of the lower court's decision denying the motion for a new trial, it was addressed to the conservator and his attorney, but not to the guardian ad litem.

And, as we have seen, the additional time for filing bill of exceptions was given appellant through the conservator, not the guardian ad litem. See Lindly v. Lindly, Tex. Civ. App., 109 S. W. 467, at page 469.

There remains for consideration appellant's motion for allowances. Benjamin Cornbleet's affidavit sets forth that the estate of appellant consists solely of a claim to an interest in a small house, previously owned by her and respondent, which the latter now professes to have sold to one of his relatives for an inadequate consideration; that appellant is absolutely destitute, and has no means of obtaining funds for the expenses incident to her appeal, or for an attorney's fee for prosecuting the same in her behalf; that she is ill and wholly unable to work, and is dependent upon her relatives for the necessities of life; that respondent is a man of ability and is capable of earning sufficient money to pay all the costs and attorney's fees incident to her appeal; and that he has means within his control with which to obtain sufficient money to defray the expenses of said appeal, aside from his earning power.

The affidavit of R. K. Wittenberg, attorney for appellant, sets forth that the court reporter's charges for transcribing her notes of the testimony taken at the trial will amount to approximately $50; and that the record of the other proceedings in the trial court, and the transcript on appeal, will cost approximately $121.50. An allowance of $250 for preliminary counsel fee is also requested, making a total of $421.50.

Respondent makes affidavit that he is a man without any means whatever, except what he earns from week to week as an insurance salesman—his income varying from $10 a week to $40 a week; that for the six months preceding the date of his affidavit he earned not more than $10 per week on an average; that at one time he owned an equity in a home in which he and defendant lived; that appellant was of unsound mind for ten years before respondent's action for divorce was filed,

and that he kept on duty at his home, practically all of the time, a special nurse to guard appellant, so that she could be kept at home instead of at an institution for the insane; that all of his resources were consumed in providing for a special nurse and for doctor's bills until finally his equity in said home was lost; that he has a daughter thirteen years of age who is and at all times has been living with him, and that he is supporting and educating her as best he can from his said meager earnings; that Benjamin Cornbleet, appellant's brother, has removed her from the Fairview Sanitarium in Chicago and has refused to inform respondent of her whereabouts; that said Benjamin Cornbleet is a man of great wealth; that he is interested in or owns or operates some 200 stores constituting a chain store system in the middle west; that said Benjamin Cornbleet has made threats that he would harass and annoy respondent because of his action in seeking a divorce from the appellant, and that he would use every means to delay or prevent him from obtaining such a divorce; that the appeal papers herein have not been filed in good faith; that respondent has already paid considerable sums, for a man of his financial ability, in the trial court and in the certiorari proceedings in this court; that he still owes his counsel a substantial portion of the original fees for representing him in said matters, and is now unable to pay said balance; that he has not paid his counsel for appearing in this court in opposition to appellant's present motion, and has no funds with which to pay for said services, and that his counsel has agreed to appear without any advance payment under the circumstances.

The rule requiring the husband to pay the wife sufficient to enable her to meet the necessary expenses and attorney's fees on appeal in a divorce case is based on necessity to prevent a failure of justice, and will not be required unless it appears that the wife is without the means to be employed for such purposes. Effinger

v. Effinger, 48 Nev. 205, 228 P. 615, 239 P. 801. Where she is destitute of such means, the husband's poverty is no defense against her right to obtain from him the means necessary to prosecute her appeal. Jeffers v. Jeffers, 55 Nev. 69, 25 P. (2d) 556. But such poverty should be taken into consideration in fixing the amount of the allowances. Herrick v. Herrick, 54 Nev. 323, 15 P. (2d) 681. In Black v. Black, 47 Nev. 346, 221 P. 239, 240, upon an application of the wife for an allowance of $250 attorney's fee on appeal, this court, in denying the motion, took into consideration, besides the husband's straitened circumstances, the fact that the wife's father was able and willing to help her financially in her divorce action. In that case the court quoted the statement of Mr. Nelson, in his work on Divorce and Separation (vol. 2, p. 803), that "The courts sometimes refuse to assist her where friends or relatives are doing so." In the case at bar, though it does not affirmatively appear that Benjamin Cornbleet is willing to assist appellant financially on this appeal, it does appear, from respondent's affidavit, that he is abundantly able to do so. We naturally infer that up to this time he has helped her, and presume that, to some extent at least, he is willing to continue aiding her on her appeal.

In the difficult situations frequently presented on motions for allowances in divorce cases, the courts can but use their best judgment in the exercise of an equitable discretion. A wife in necessitous circumstances must be placed in a position which will enable her to prosecute her appeal. When that is done, justice to the husband requires that he be not placed in a position such as to make it impossible for him to strive for the affirmance of a decree presumably lawful and just.

Respondent's motion to dismiss the appeal is denied. It is further ordered that, within thirty days after written notice of this decision, respondent pay to the clerk of this court, for the use and benefit of appellant in the prosecution of her appeal, the aggregate

amount of one hundred ninety-five dollars, being $30 toward the cost of transcribing court reporter's shorthand notes of the trial in the district court, $65 toward the cost of preparing typewritten transcript of the proceedings in the lower court for filing in this court, and $100 for attorney's fee. After said money is paid to the clerk of this court, it may be paid out by her to said conservator, or, upon his authorization, to appellant's attorney. Appellant may later apply for any further order or orders deemed necessary or proper. Reasonable time after compliance with said order for allowances will be allowed appellant by the district court for preparing, filing and serving proposed bill of exceptions, and for taking such other steps as may be required to complete the bringing of her appeal to this court.

COLEMAN, J., died before the foregoing opinion was completed.

## ON PETITION FOR REHEARING

July 19, 1939.

*R. K. Wittenberg,* for Appellant.

*William M. Kearney* and *Robert Taylor Adams,* for Respondent.

*Per Curiam:*

Upon petition for respondent, and good cause appearing therefor, it is hereby ordered that the petition for rehearing in the above-entitled cause be, and the same is hereby, granted; the time for such rehearing is hereby set for Thursday, the 27th day of July 1939, at the hour of 10 o'clock a. m. The rehearing will be confined to the matters presented in the petition.

## ON REHEARING

November 29, 1939. 96 P. (2d) 200.

For former opinion, see 59 Nev. 163, 87 P.(2d) 800.

*R. K. Wittenberg,* for Appellant.

*William M. Kearney* and *Robert Taylor Adams,* for Respondent.

## OPINION

By the Court, TABER, C. J.:

In our decision denying respondent's motion to dismiss appeal and granting, in part, appellant's motion for allowances, 59 Nev. 163, 87 P.(2d) 800, 805, we included the following sentence: "Reasonable time after compliance with said order for allowances will

be allowed appellant by the district court for preparing, filing and serving proposed bill of exceptions, and for taking such other steps as may be required to complete the bringing of her appeal to this court." Respondent filed a petition for rehearing, which was granted. On the rehearing it was shown that appellant's time for filing and serving bill of exceptions had been extended several times by the district court; but had expired, without stipulation for further time, on February 28, 1939, four days before said decision of this court was filed. It further appears that, after the petition for rehearing was filed but before it was granted, appellant, in the district court, noticed a motion for an order relieving her from her default in failing to secure an extension of time within which to file a bill of exceptions, the motion being based upon the ground that such failure was the result of mistake, inadvertence, and excusable neglect.

██ It is a jurisdictional requirement that bills of exceptions be filed and served within the time prescribed by statute, or within such further time as may be given by order of court or stipulation. Johnson v. Johnson, 54 Nev. 433, 22 P. (2d) 128; Comstock Phoenix Min. Co. v. Lazzeri, 55 Nev. 421, 36 P. (2d) 360. At the time the order of this court was made directing the district court to allow a reasonable time after compliance with the order for allowances within which to file and serve proposed bill of exceptions, it was not known to this court that appellant's time for taking such steps had expired. When respondent's motion to dismiss the appeal and appellant's motion for allowances were heard and submitted, appellant's time for filing and serving bill of exceptions had not expired. Respondent could not foresee that it would be allowed to expire, and that this court would make the order complained of. He was, therefore, not in a position to attack the order until and except by petition for rehearing.

 The order of this court made on March 4, 1939,

directing the district court to allow a reasonable time after compliance with the order for allowances within which to prepare, file, and serve proposed bill of exceptions, is hereby set aside. The order for allowances made on the same day is hereby modified by disallowing the $30 item toward the cost of transcribing the court reporter's shorthand notes of the trial in the lower court, and disallowing further the item of $65 toward the cost of preparing typewritten transcript of the proceedings in the lower court for filing in this court. The allowance of $100 for attorney's fee will remain undisturbed.

If the district court shall decide, or has decided, to relieve appellant from her default in failing to secure an extension of time beyond February 28, 1939, within which to file and serve her bill of exceptions, or if other legal and proper cause be made to appear, she may renew her application to this court for further allowances on appeal.

ORR, J., did not participate in this rehearing.