*In the Matter of Andrea Jacobson*
No. 1741, Sept. Term 2021
Opinion by Leahy, J.

**Estates & Trusts Law > Wills and Revocable Trusts > Standing > Pre-Mortem Undue Influence Contest**

To have standing, a plaintiff must have a legally protected interest, whether provided by statute or arising out of contract, tort, or property ownership. *State Ctr., LLC v. Lexington Charles P'ship*, 438 Md. 451, 500-02 (2014). Appellant sought to bring a pre-mortem contest to her mother's wills and revocable trust agreements. As merely a presumptive heir, however, appellant possessed no property interest in her mother's assets because it is "only after the death of the ancestor that [her] children are entitled to the *status* of very heirs, which will enable them to assert a right to property derived through [her] by inheritance." *Sellman v. Sellman*, 63 Md. 520, 525 (1885). Accordingly, appellant lacked standing to challenge her mother's wills and revocable trust agreements because she had no property interest in her mother's trust assets or potential probate estate.

**Estates & Trusts Law > Powers of Attorney > Estates and Trusts Article § 17-103 > Standing**

Estates and Trusts Article ("ET") § 17-103(a)(4) confers standing on a principal's descendant to petition a court to review the actions of an attorney-in-fact and "construe" a power of attorney. Considering ET § 17-103's main purpose to detect and stop agent abuse, an action to "construe" a power of attorney under ET § 17-103 must be filed in the context of a dispute concerning abuses of power by the attorney-in-fact while the principal is incapacitated. Here, although appellant could qualify as a proper party to bring a claim under ET § 17-103(a)(4) insofar as she is a descendant, her complaint did not allege any misuse or abuse of power by the attorney-in-fact and therefore failed to properly state a cause of action under ET § 17-103. Accordingly, under our "cause of action" approach to standing, because appellant was not "not entitled to invoke the judicial process in [this] particular instance[,]" her claim was properly dismissed for lack of standing. *State Ctr.*, 438 Md. at 502.

Circuit Court for Montgomery County
Case No. 171447-FL

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1741

September Term, 2021
_____

IN THE MATTER OF ANDREA JACOBSON
_____

Arthur,
Leahy,
Sharer, J. Frederick
     (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Leahy, J.
_____

Filed:  December 6, 2022

Albright, J., did not participate in the Court's
decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Appellant Amy Silverstone ("Amy") filed a petition for guardianship on October 2, 2020, in the Circuit Court for Montgomery County, Maryland, to obtain control over the person and property of her mother, Andrea Jacobson ("Andrea").[1]  Amy amended the guardianship petition to include claims normally reserved to estate administration while her mother was still alive.  At its core, this appeal concerns Amy's effort to set aside her mother's estate planning documents (including several wills, revocable trust agreements, and powers of attorney) conferring authority upon appellee/cross-appellant Lisa Jacobson ("Lisa")—Andrea's sister and Amy's aunt.  Amy contends that these documents were the product of undue influence and should therefore be declared null and void.  Andrea and Lisa insist that Amy lacks standing to contest these estate documents based on undue influence because Andrea is still alive.

Amy challenges two orders issued by the circuit court.  First, the order entered on November 2, 2021, dismissing the remaining claim in Amy's Second Amended Petition for Guardianship; specifically, Count IV, setting out her undue influence challenge to Andrea's estate planning documents.  Second, the order entered on December 13, 2021, denying Amy's motion to reconsider the November 2 order and striking Amy's Third Amended Petition, filed after judgment was entered.  In their cross-appeal, Andrea and Lisa contest the circuit court's order denying their joint motion for sanctions entered on December 17, 2021.

---

[1] In this opinion, we will refer to the parties by their first names to avoid confusion as to which Ms. Jacobson (*i.e.*, Lisa or Andrea) we are referring.

Accordingly, the parties present four questions for our review.[2] Amy's questions, here consolidated and rephrased based on the issues addressed in her briefing and at oral argument, are:

I.      Did the circuit court err in dismissing Count IV of the Second Amended Petition due to lack of standing and failure to state a claim upon which relief can be granted?

II.     Did the circuit court abuse its discretion in denying Amy's motion for reconsideration?

III.    Did the circuit court abuse its discretion in denying Amy leave to amend and striking her Third Amended Petition without declaring the rights of the parties after her claims had been dismissed?

Andrea and Lisa's question condenses to the following:

---

[2] In her principal brief, Amy presented the following three questions for our review:

I.      "The Court dismissed Petitioner's Second Amended Complaint Pursuant to Rule 2-303 (conclusory statement and no facts) and because Petitioner's Complaint was premature and Petitioner was without standing. Was this ruling correct?"

II.     "Petitioner filed a Third Amended Complaint with alleged new facts and a new count, i.e. Declaratory Relief. Petitioner's Third Amended Complaint included a Motion for Leave to Amend and for Reconsideration. The Court denied Petitioner's Motion and Third Amended Complaint. Was this ruling correct?"

III.    "Did the Circuit Court err when it dismissed Appellant's Complaint for Declaratory Relief without making a written declaration of the parties' rights? [Sibley v. Doe, Supra, at 649]?"

Andrea and Lisa, in turn, presented the following question for our review in their cross-appeal:

IV.     "Did the Circuit Court abuse its discretion in denying Andrea and Lisa Jacobson's joint Motion for Sanctions for filing a wholly deficient Motion to Amend and Reconsider and a Third Amended Complaint after the Circuit Court dismissed the Second Amended Complaint?"

IV. Did the circuit court abuse its discretion in denying Andrea and Lisa's motion for sanctions?

We discern no error or abuse of discretion by the circuit court. First, we hold that the court correctly concluded that Amy lacked standing to challenge the validity of Andrea's wills and revocable trust agreements while Andrea is still living because Amy has no property interest in her mother's trust assets or potential probate estate other than a remote expectancy as a presumptive intestate heir. Also, because Amy failed to allege any misuse or abuse of power by Lisa in her capacity as agent, she was not able to invoke the judicial process to challenge Andrea's durable, statutory form, and health care powers of attorney. Moreover, the circuit court properly dismissed Count IV because Amy relied entirely on bald and conclusory allegations in her pleading.

Second, we hold that the circuit court did not abuse its discretion in denying Amy's motion to reconsider because Amy's deficient motion did not bring the court's attention to any errors that it was required to rectify. Instead, Amy simply provided page-length quotations from two prior cases setting out black-letter law on undue influence without any explanation as to how the court erred in dismissing her petition on grounds of standing.

Third, we discern no abuse of discretion in the circuit court's decisions to (1) deny Amy leave to amend, and (2) strike Amy's Third Amended Petition filed after judgment was entered and before obtaining leave to file it under Maryland Rule 2-322(c). Nor did the circuit court err, as Amy contends, in declining to issue a declaration of the parties' rights by striking the improper pleading without reaching its merits.

3

Fourth, we hold the circuit court did not abuse its discretion in denying Andrea and Lisa's joint motion for sanctions against Amy for filing her motion to reconsider the court's November 2 order. Even if Andrea and Lisa could show that Amy brought her motion to reconsider in bad faith or without substantial justification, the circuit court was well within its discretion to deny an award of sanctions.

For these reasons, we affirm the judgment of the circuit court.

## BACKGROUND

Andrea is a 72-year-old woman currently living in Rockville, Maryland. She has been diagnosed with dementia, memory impairment, and cognitive impairment. Andrea is cared for by a variety of specialists, including a geriatric case manager, neurologist, primary-care physician, several financial and tax professionals, and her sister, Lisa. She lives primarily off the income produced by a testamentary trust created by her mother (the "Virginia Trust"), of which she is co-trustee and lifetime income beneficiary along with Lisa.[3]

Andrea's immediate family includes Lisa, Amy, and her grandson, Bryce—Amy's son. Amy and Andrea appeared to enjoy a loving relationship that became strained over

---

[3] Pursuant to a 2011 consent order entered by the Circuit Court for Arlington County, Virginia–which has jurisdiction over the trust because it is funded almost exclusively by real property located there–the prior trustees tendered their resignations and were replaced by Lisa and Andrea. The consent order also specified that Amy, who is a remainder beneficiary of the Trust and stands to receive a distribution of the principal upon the death of Andrea and Lisa, is to serve as successor trustee for Andrea when she is no longer able to serve. Although, as explained below, Amy was removed as a beneficiary under the Andrea Susan Jacobson Revocable Trust, the record does not reflect that the 2011 consent order was ever modified to remove Amy as a beneficiary under the Virginia Trust.

4

time, leading to their eventual estrangement. In particular, following two lengthy exchanges over text on July 10, 2018, and February 22, 2019, communication between Amy and her mother essentially ceased. In Amy's view, the parties' falling out stemmed over money and various loans from Andrea to Amy. Amy texted Andrea that it was "awful and disgusting that money is more important to you than your relationship with Bryce and I." Andrea, in turn, responded that "money is only a part of it" and that she remained disappointed that "I never hear from you unless you want something." As the filial relationship turned more and more acrimonious, Andrea had already begun reorganizing her affairs.

In 2015, Andrea executed a series of documents which conferred upon Lisa the authority to manage Andrea's care and finances. On December 2, 2015, Andrea executed a durable power of attorney (the "POA") naming Lisa as her agent and providing her with broad powers to manage Andrea's affairs. The POA also named Julia Lipps-Joachim ("Julia"), Lisa's daughter and Andrea's niece, as the successor agent in the event Lisa could no longer serve. On the same day, Andrea executed a Maryland Statutory Form Financial Power of Attorney also naming Lisa and Julia as agent and successor agent respectively. Along the same vein, Andrea executed an advanced medical directive authorizing Lisa, or Julia in her stead, to make end-of-life medical decisions for Andrea. In June of 2019, those documents were amended to swap Lisa's other daughter, Emily Treanor ("Emily"), for Julia as the successor agent.

From 2016 through 2019, Andrea also restructured her estate. On April 27, 2016, Andrea executed an Amended Trust Agreement for the Andrea Susan Jacobson Revocable

5

Trust naming Lisa as trustee and remainder beneficiary, with Bryce as contingent remainder beneficiary if Lisa were to predecease Andrea. According to its terms, the Trust is to pay the income to Andrea for her life and "distribute all right, title, and interest the Grantor owns in the Grantor's condominium" in Silver Spring, Maryland. On the same day, Andrea executed a pour-over will devising her remaining assets to the revocable trust to be held and distributed according to the terms of the trust and naming Lisa and Julia as co-personal representatives.

Then, on August 29, 2018, shortly after her falling out with Amy, Andrea executed a Second Amended Trust Agreement naming Lisa as remainder beneficiary, with Lisa's heirs (*i.e.*, Julia and Emily) named as contingent remainder beneficiaries. The August 2018 Trust Agreement, currently in effect, includes a disinheritance clause that states:

> After careful thought and consideration, the Grantor does specifically intend, and does hereby by this Trust Agreement, disinherit both **AMY** and **BRYCE**. For all purposes of this Trust, it shall be assumed that **AMY** and **BRYCE** have both predeceased the Grantor. Neither **AMY** nor **BRYCE** shall in any way be a beneficiary of or receive any portion of the Trust or the Grantor's estate.

 (Emphasis in original).

At the same time, Andrea executed a second pour-over will devising all remaining assets to the revocable trust and adding a parallel clause disinheriting Amy and Bryce and providing that they "shall be deemed to have predeceased me." As with the 2016 pour-over will, the August 2018 will devises and bequeaths Andrea's residuary estate to the revocable trust to be held and distributed according to its terms. Effectively cut out of Andrea's estate and affairs, Amy initiated the current litigation.

6

**The Guardianship Litigation and Amended Pleadings**

On October 2, 2020, Amy filed her initial petition for guardianship over the person and property of Andrea in the Circuit Court for Montgomery County. The Petition included three counts seeking: (I) assumption of jurisdiction by the circuit court over the Virginia Trust, (II) guardianship over the person and property of Andrea, and (III) court-ordered visitation with Andrea.

Thereafter, while the guardianship proceeding was pending, on January 19, 2021, Amy filed an amended petition (the "First Amended Petition"). The First Amended Petition added a fourth count alleging that Lisa unduly influenced Andrea in the making of her estate planning documents. Amy requested that those documents "be declared null and void and/or revoked as a result of undue influence," and she sought damages in the amount of $75,000 without explanation. On February 2, 2021, Andrea filed a timely motion to strike the First Amended Petition in its entirety and dismiss the underlying claims.

On February 25, 2021, Amy filed another amended petition (the "Second Amended Petition") adding Lisa, Emily, Julia, and William Murray—the Arlington County Commissioner of Accounts charged with overseeing administration of the Virginia Trust—as defendants and "real parties in interest." In her Second Amended Petition, Amy included the following allegations in setting out her undue influence challenge:

> 40. That the benefactor, Andrea S. Jacobson, and the beneficiary, Lisa Allyn Jacobson are involved and have been involved in a relationship of confidence and trust. Andrea S. Jacobson and Lisa Allyn Jacobson are sisters. And, Lisa Allyn Jacobson is a confidante of Andrea S. Jacobson and is in complete control of Andrea S. Jacobson's medical treatment, health and wealth. That Andrea S. Jacobson at all times herein reposed trust and confiden[ce] in Lisa Lipps Jacobson.

7

41. the estate documents of Andrea S. Jacobson contain substantial benefits to Lisa Allyn Jacobson- all of Andrea S. Jacobson's estate is controlled and bequeathed to Lisa Allyn Jacobson. In effect an inter-vivos transfer of all Andrea S. Jacobson wealth property, and health.

42. that Lisa Allyn Jacobson caused and/or assisted in effecting the execution of Andrea S. Jacobson's estate planning documents, caused, coerced, exerted undue influence, abused and violated her confidential relationship with Andrea S. Jacobson

43. that Lisa Allyn Jacobson has had and continues to have multiple opportunities to exert influence on Andrea S. Jacobson and has in fact coerced and exerted influence on Andrea S. Jacobson to the financial benefit of Lisa Lipps Jacobson, breached her confidential relationship

44. that the estate planning documents contain unnatural dispositions in that Andrea S. Jacobson specifically disinherited her only daughter/ child and only grandson to the benefit of Lisa Allyn Jacobson and the daughters of Lisa Allyn Jacobson,

45. that the estate planning documents changed, significantly, the prior estate planning documents

46. that Andrea S. Jacobson was/is highly susceptible to the undue influence of Lisa Allyn Jacobson and because of said undue influence executed the aforesaid documents disinheriting her child and grandchild and transferring all her wealth and health to her sister and sister's daughters; that Andrea S. Jacobson has now been diagnosed as having dementia, which causes impairment in cognitive memory and judgment. Her condition has progressed and she is presently deemed incapable of managing her financial and medical affairs. Dr. Nikar's letter states that he recommends her POA take charge of decisions and actions.

In response, on March 10, 2021, Andrea again filed a timely motion to strike Amy's Second Amended Petition in its entirety arguing, among other things, that the new defendants were not properly served, that the circuit court lacked jurisdiction over both the Virginia Trust and the Commissioner of Accounts, and that Amy's claims were meritless aside from the fact that she lacked standing to bring them.

8

**The Show Cause Proceedings and Dismissal of Counts II and III**

Following the initial petition, on November 2, 2020, the circuit court issued an order to show cause why Andrea should not be examined to determine whether Andrea was in need of a guardian under Maryland Rule 10-202(a)(3)(A).[4] During the show cause hearing, the court heard testimony from Amy, Lisa, and Andrea's team of physicians, financial professionals, and caregivers over two days—March 11 and April 16, 2021.[5] At the conclusion of the hearing, the court ruled from the bench and discharged the show cause order after finding that Andrea was well cared-for and unequivocally not at risk within the meaning of Rule 10-202.

On June 30, 2021, the circuit court entered judgment in favor of Andrea on Counts II (guardianship) and III (visitation) of Amy's Second Amended Petition. With respect to

---

[4] When seeking a guardianship of an alleged disabled person, the petitioner ordinarily must file with the petition signed and verified certificates by at least two physicians who have examined the ward. Md. Rule 10-202(a)(1). When such certificates are not provided because the petitioner has been unable to access or examine the ward, then a show cause proceeding is held. Maryland Rule 10-202(a)(3)(A) provides as follows:

> Refusal to Permit Examination. If the petition is not accompanied by the required certificate and the petition alleges that the disabled person is residing with or under the control of a person who has refused to permit examination or evaluation . . . and that the disabled person may be at risk unless a guardian is appointed, the court shall defer issuance of a show cause order. The court shall instead issue an order requiring that the person who has refused to permit the disabled person to be examined or evaluated appear personally on a date specified in the order and show cause why the disabled person should not be examined or evaluated. The order shall be personally served on that person and on the disabled person.

[5] Pursuant to Maryland Code (1974, 2017 Repl. Vol.), Estates & Trusts Article ("ET"), § 13-705(e)(1), Andrea waived her right to be present at the hearings.

9

Count II, the court found that Amy did not "adduce any proof under Rule 10-202(a)(3) that Andrea S. Jacobson may be at risk unless a guardian is appointed" and thus denied her petition for appointment as Andrea's guardian.[6]  Regarding Count III, the court denied Amy's request for visitation, explaining that it "had no power to order visitation between adults with the narrow exception of certain limited cases, not applicable here, when a guardian has been appointed." [7]

**Court Dismisses all Counts**
**After Hearing on Motion to Reconsider and Remaining Issues**

On July 9, 2021, Amy filed a motion to reconsider the June 30 order claiming, for the first time, that several of Andrea's estate planning documents included signatures forged by Lisa.  After the parties jointly moved for a continuance, the circuit court deferred a ruling on the motion to reconsider and set a hearing date for October 27, 2021, to address the remaining issues raised in Counts I and IV of the Second Amended Petition.  At the hearing, the circuit court heard argument from counsel, dismissed both counts, and dismissed as moot the motion to reconsider after Amy's counsel withdrew it at the hearing.

As to Count I concerning Amy's request to assume jurisdiction over the Virginia Trust, the court found that "I don't believe that under any reasonable standard with respect to when this court should assume jurisdiction over an estate like this that the standard has

---

[6] The circuit court mistakenly referred to Count II as Count I, which instead dealt with the Virginia Trust.

[7] The circuit court mistakenly referred to Count III as Count II, which instead dealt with the guardianship over Andrea.

been met." With respect to Count IV, the court granted Andrea's motion to strike and dismissed Amy's undue influence claim finding that: (1) the claim was unsupported by sufficient factual allegations, and (2) Amy lacked standing to bring such a claim while Andrea remained alive. The court explained its ruling, in relevant part, as follows:

> All right, so I think the last issue before me relates to Count 4 which is the claim of undue influence and, with respect to this, I am satisfied that there is no standing on the part of Ms. Silverstone to challenge, at this point, the revocable trust of Andrea, or the documents related to her present condition.
>
> Likewise, that with respect to the estate issues, there's no basis for asserting a challenge to the will at this time. There's a specific process under Maryland law for doing that at the time following the death and the opening of an estate under the [Estates] and Trust Article [5-207]. It has a specific time for filing a petition to caveat a will so the action at this time would be premature.
>
> But even if I got by the standing issue, I don't find, based upon the allegations that are, while Mr. Paugh is correct with respect to notice pleading, it does require some facts to support conclusory and here, or to support the conclusions, and here, there are conclusory allegations, but there are no facts alleged, in my view, sufficient to support a claim. So I will go ahead and grant the motion to strike the Second Amended Petition as related to count four, and I think that's everything.

On November 2, 2021, the court then entered a corresponding order dismissing Counts I and IV and discharging the remaining motions pending before the court.

### Post-Dismissal Proceedings

The very next day, on November 3, 2021, Amy filed a motion to reconsider the November 2 order and for leave to amend her Second Amended Petition. Almost bereft of any specific argument, that motion contained a brief prayer for leave to amend and recited lengthy quotations from two Maryland cases dealing with undue influence; one in the context of an *inter vivos* transfer that was challenged post-mortem, and the other in the

11

context of a will contest. Without waiting for leave to amend, Amy filed a Third Amended Petition on the same day that included a fifth count for declaratory relief based on undue influence and the forgery allegations initially included in Amy's July 9 motion to reconsider.[8]    According to Amy, she retained a document examiner who determined that Andrea's 2015 and 2019 powers of attorney as well as the August 2018 amended trust agreement were all forged. On November 5, 2021, Amy re-filed her Third Amended Petition with additional factual allegations related to Count IV (undue influence).

Andrea filed a timely motion to strike Amy's Third Amended Petition, followed by an opposition to Amy's motion to reconsider along with a motion for sanctions against Amy for filing the November 3 motion to reconsider without substantial justification. On December 13, 2021, the circuit court denied the November 3 motion to reconsider and granted Andrea's motion to strike the Third Amended Petition in its entirety. Then, on December 17, 2021, the court denied Andrea's motion for sanctions.

Amy filed a timely notice of appeal from the November 2 and December 13 orders on January 6, 2022.[9] Andrea and Lisa filed a timely cross appeal from the circuit court's December 17 order on January 7, 2022.

---

[8] Perplexingly, Amy's Third Amended Petition included and restated nearly verbatim Counts II-III of her initial petition. At the October 27 hearing, Amy's counsel withdrew her motion for reconsideration of the dismissal of Counts II and III, describing them as "moot."

[9] The appeal from the November 2 order is timely because the November 3 motion to reconsider was filed within 10 days of the November 2 order and thus tolled the time to file a notice of appeal while that motion was considered. Md. Rule 8-202(c); *Johnson v.*

(Continued)

12

**I.**

**Failure to State a Claim and Lack of Standing to Bring
Second Amended Complaint**

*Standard of Review*

The decision to grant a motion to dismiss is a legal question, and therefore we review the decision without deference to the trial court. *Grueff v. Vito*, 229 Md. App. 353, 376 (2016) (reviewing dismissal of remainder beneficiaries' challenge to actions of trustee of irrevocable trust). In doing so, we must assume "the truth of the complaint's factual allegations and of any reasonable inferences that can be drawn therefrom." *GPL Enter., LLC v. Certain Underwriters at Lloyd's*, 254 Md. App. 638, 649 (2022). Dismissal is only proper if "the alleged facts and reasonable inferences would fail to afford relief to the plaintiff." *Id.* Nonetheless, bald assertions and conclusory statements by the pleader will not suffice and the court "need not accept the truth of pure legal conclusions." *Id.*

**A. Parties' Contentions**

Amy's opening brief collects a series of quotations from statutes, rules, and cases untethered to the questions as presented on page four of her brief. The first issue, as presented in Amy's brief is: "The Court dismissed Petitioner's Second Amended Complaint Pursuant to Rule 2-303 (conclusory statement and no facts) and because

---

*Francis*, 239 Md. App. 530, 541 (2018) ("Rule 8-202(c) provides for an exception that tolls the running of [the thirty-day] appeal period while the court considers certain motions, including motions to alter or amend that are filed within ten days of entry of the judgment or order" under Rules 2-534 and 2-535).

Petitioner's Complaint was premature and Petitioner was without standing. Was this ruling correct?" Although seemingly directed toward the dismissal of her entire four-count complaint, Amy's briefing on this claim of error includes no argument or authority whatsoever relating to Counts I (assumption of jurisdiction over the Virginia Trust), II (guardianship over Andrea), and III (visitation with Andrea). Under Maryland Rule 8-504(a)(6), a party is required to present argument on each issue that it intends to raise before this Court, or we may decline to consider it. *Tallant v. State*, 254 Md. App. 665, 677 n.9 (2022). Consequently, we consider only Amy's relatively formless arguments relating to the dismissal of Count IV.

Amy maintains that she had standing to challenge the validity of Andrea's will, powers of attorney, and revocable trust, primarily based upon her interest as Andrea's daughter and presumptive heir. By merely quoting Rule 2-303(b) without further explanation, Amy appears to argue that the circuit court erred in dismissing Count IV because she complied with the minimal pleading requirements of Maryland Rule 2-303.[10]

Andrea and Lisa respond that Amy's petition was properly dismissed. First, they argue that Amy had no standing to challenge the validity of Andrea's powers of attorney in the absence of any specific abuse of authority by Lisa in her capacity as Andrea's agent.

---

[10] Amy's opening brief also includes an entirely unexplained citation to the three-year statute of limitations as well as a block quote addressing the doctrines of laches, seemingly for the proposition that she was required to bring her undue influence challenge because the doctrine of laches and the statute of limitations would have barred her claim had she waited until her mother's death to act. Because this argument was not presented to the circuit court below, it is waived, although this Court retains the discretion to consider it on appeal to the extent that it concerns jurisdiction of the trial court over the subject matter. Md. Rule 8-131(a). In this case, we decline to do so.

Second, Andrea and Lisa aver that Amy lacked standing to contest the validity of Andrea's revocable trust because Amy was not a beneficiary of the trust and thus had no interest to assert. Third, they point out that while Amy would have standing to caveat Andrea's will upon her death, she did not possess the ability to bring an undue influence challenge until that time. Finally, they contend that even if Amy had standing, Count IV was properly dismissed because Amy relied entirely on conclusory allegations and failed to plead sufficient facts to support her claim.

### B. *Standing to Contest a Will or Revocable Trust Pre-Mortem*

Standing, in its most conventional sense, refers primarily to *who* may "invoke the judicial process in a particular instance." *State Ctr., LLC v. Lexington Charles P'ship*, 438 Md. 451, 502 (2014) (internal quotation marks omitted). To have standing, a plaintiff must have a legally protected interest, whether provided by statute or arising out of contract, tort, or property ownership. *Id.* at 500-02. The doctrine of standing is thus designed to ensure that a plaintiff "has a sufficiently cognizable stake in the outcome." *Kendall v. Howard Cnty.*, 431 Md. 590, 603 (2013). Under Maryland's "cause of action" approach to standing, a plaintiff lacks standing unless "governing law confers on the plaintiff a right to bring the claim to the courts." *State Ctr.*, 438 Md. at 501; *see also id.* at 502 ("the appellate courts in Maryland have adopted the 'cause of action' approach, which groups the traditionally distinct concepts of standing and cause of action into a single analytical construct[.]").

At the outset of our analysis of this case, we observe that Amy fails to explain exactly what cause of action she sought to invoke by her allegations of undue influence. That may be because there was no obvious choice considering Amy's fundamental

15

justiciability problems. For example, Amy most certainly could not caveat Andrea's will while Andrea remained alive. Maryland Code, (1974, 2017 Repl. Vol.), Estates & Trusts Article ("ET"), section 5-207(a)(1) expressly provides that a caveat petition may be filed "at any time before the expiration of 6 months *following the first appointment of a personal representative* under a will." ET § 5-207(a)(1) (emphasis added). Moreover, section 5-207(b)(1) provides that the filing of a petition to caveat "has the effect of a request for judicial probate." ET § 5-207(b)(1). Both the appointment of a personal representative and the opening of judicial probate can only occur after the testator has actually died. *See, e.g.*, ET § 5-201(b)(1) (providing that a petition for probate must include the decedent's date of death). Although not explicit, the structure of section 5-207 and its place within the Title 5 of the Estates & Trusts Article—which lays out the details of probate administration—contemplate that a petition to caveat can only be filed after death. *See Witte v. Azarian*, 369 Md. 518, 525-26 (2002) (providing that courts may look to other indicia of legislative intent such as the structure of the statute and its relation to other laws).

Although we have not yet had occasion to address the exact issue of pre-mortem standing to challenge the validity of a will or revocable trust, our sister courts have done so on several occasions. Indeed, several of our sister courts have ably explained that pre-mortem actions seeking to set aside a will are not justiciable for two overriding reasons.

First, because a will is testamentary in nature, "it operates only upon and by reason of the maker's death" and "[u]ntil then it is ambulatory." *In re Radda*, 955 N.W.2d 203, 211-13 (Iowa 2021). Accordingly, as the Iowa Supreme Court recently explained, "[p]redeath challenges to wills may be a waste of time—the testator might replace the will

16

at issue with a new one, die without property, or the challenger might die before the testator." *Id.* at 213. Thus, as a matter of ripeness, when the testator is "currently alive, issues involving the validity of [the testators'] Last Will and Testament are likely not even ripe for adjudication by *any* court" because "it is premature to interpret or invalidate a will that has not yet been admitted to probate because the testator is still alive." *Hodge ex rel. Skiff v. Hodge*, 78 F. Supp. 2d 29, 33 (N.D.N.Y. 1999) (emphasis supplied in original).

Second, because a will creates no present interest in the testator's property, "the absence of parties in interest, which results from the rule that a living person has neither heirs nor legatees, render impossible the assumption that a court has inherent power to determine the validity of a will prior to the death of the maker." *Cowan v. Cowan*, 254 S.W.2d 862, 863-65 (Tex. Civ. App. 1952) (quoting 57 Am. Jur. § 523)); *accord Alexander v. Walden*, 337 S.E.2d 241, 242 (S.C. Ct. App. 1985). This is a venerable principle, one which our Court of Appeals similarly recognized—a long time ago—in holding that the presumptive heirs of a grantor could not contest an *inter vivo*s transfer of property merely based on an expectancy. *Sellman v. Sellman*, 63 Md. 520, 522-24 (1885). Indeed, in *Sellman*, the Court observed that "the children and grandchildren of the living ancestor could not claim a right to maintain a suit in respect to the property of that ancestor while their interest in such property was merely an expectancy, depending upon a future inheritance that, by possibility, may never occur." *Id.* at 522. Rather, "it is only after the death of the ancestor that his children are entitled to the *status* of very heirs, which will enable them to assert a right to property derived through him by inheritance." *Id.* at 525

17

(emphasis in original). Here, Amy occupies the same position: she possesses no property interest in Andrea's assets other than the remote expectancy of a presumptive intestate heir.

These principles—while adduced primarily in the context of wills—apply with equal force to revocable trusts. At least one court has found that the disinherited beneficiaries of a revocable trust lacked standing to challenge trust amendments executed by a living settlor. *Linthicum v. Rudi*, 148 P.3d 746, 747-49 (Nev. 2006). In *Linthicum*, the Nevada Supreme Court held that the dismissal of the plaintiff's undue influence challenge to an amendment removing them as remainder beneficiaries of the trust was proper because the settlor was still alive. *Id.* at 747-49. As the court noted, remainder beneficiaries under a revocable trust "have only a contingent interest, at most, while the settlor is still alive. That interest does not vest until the settlor's death." *Id.* at 749. That logic aligns with our precedent establishing revocable trusts as primarily testamentary instruments that convey only a contingent interest that can be revoked at any time. *Grueff v. Vito*, 229 Md. App. 353, 380 (2016) ("A revocable trust is a trust that the person who creates it . . . can revoke during the person's lifetime. The beneficiaries' interest in the trust is contingent only, and the settlor can eliminate that interest at any time.") (quoting *Estate of Giraldin*, 290 P.3d 199, 201 (Ca. 2012)); *Upman v. Clarke*, 359 Md. 32, 45-48 (2000) (finding that a revocable trust was "predominantly testamentary . . . because [Settlor] reserved the right to revoke the trust, she retained the power, with the stroke of a pen, to undo the transfer and recover full legal title to the property, at any time and for any reason.").

We find the foregoing cases persuasive and conclude that Amy cannot bring a pre-mortem contest to a will or revocable trust. Amy lacks standing because she has no property interest in her mother's trust assets or potential probate estate other than a remote claim as a presumptive intestate heir. Moreover, Amy's claims may well be unripe because Andrea could, to the extent she is sufficiently lucid, execute another will or trust amendment or simply run out of assets, thus making this matter "future, contingent and uncertain." *State v. G & C Gulf, Inc.*, 442 Md. 716, 721 (2015) (quoting *State Ctr.*, 438 Md. at 591). When Andrea passes, Amy will have statutory standing to contest the validity of Andrea's revocable trust under ET § 14.5-605 and to caveat Andrea's will under ET § 5-207. Until that time, however, Amy lacks standing, and the circuit court correctly dismissed her undue influence challenge to Andrea's wills and revocable trust agreements on those grounds.

### C. The Powers of Attorney

Amy points to our opinion in *Ibru v. Ibru*, in support of her contention that she had standing to challenge the validity of Andrea's powers of attorney, as amended. 239 Md. App. 17 (2018). In *Ibru*, we addressed the meaning of ET § 17-103, which provides statutory standing to a broad class of persons to prevent abuses of power by agents appointed under a power of attorney. ET § 17-103; *Ibru*, 239 Md. App. at 42-44. ET § 17-103(a) provides, in relevant part, as follows:

> (a) The following persons may petition a court to construe a power of attorney or review the agent's conduct, and grant appropriate relief:
> \*\*\*
> (4) The *principal's spouse, parent, or descendant*;

(5) An individual who would qualify as a presumptive heir of the principal;

(Emphasis added).

In *Ibru*, we concluded that ET § 17-103(a)(4) conferred standing on the principal's son, Peter, based on a common-sense interpretation of the statute. There, the principal, Chief Ibru, traveled to the United States from Nigeria and executed a durable power of attorney and general power of attorney appointing his daughter, Janet, as his agent. *Ibru*, 239 Md. App. at 24. After Chief Ibru's health began to deteriorate, Peter filed an action to challenge specific actions taken by Janet pursuant to her authority as Chief Ibru's agent. *Id.* at 26. Peter also sought to declare the powers of attorney null and void on the grounds of forgery, fraud, and duress. *Id.* After reviewing the plain meaning of ET § 17-103, we concluded that because "Peter is a descendant of Chief Ibru, . . . Peter has standing under ET [§ 17-103(a)(4)] to petition the court to review Janet's actions as an agent and construe the validity of the Powers of Attorney." *Id.* at 46.

Amy's broad reading of the holding of *Ibru* is divorced from the facts and analysis in that case.[11] The circumstances presented in *Ibru* are relevantly distinguishable. It bears repeating that to have standing a plaintiff must present a cause of action and have a legally protected interest, whether provided by statute or arising out of contract, tort, or property ownership. *State Ctr.*, 438 Md. at 499-502. As Andrea and Lisa correctly point out, in *Ibru*, we confronted a situation where the attorney-in-fact had allegedly diverted substantial

---

[11] ET § 17-103 does not apply to Andrea's health care power of attorney pursuant to § 17-109, which provides that certain documents are outside the scope of the title, including advanced health directives. ET § 17-109(b)(2).

sums from the principal's accounts. *Ibru*, 239 Md. App. at 28-30. Here, by contrast, there has been no allegation that Lisa engaged in any improper behavior whatsoever in her role as Andrea's agent. Considering the legislative intent behind § 17-103, which we examined in *Ibru*, we conclude that a freestanding challenge to the validity of a power of attorney in the absence of any evidence of misuse or abuse of authority is not contemplated by the statute.

As we explained in *Ibru*, ET § 17-103 was modeled verbatim on § 116 of the Uniform Power of Attorney Act ("UPOAA"). *Ibru*, 239 Md. App. at 43-45. The drafters' comment to UPOAA § 116 explains that the "primary purpose of this section is to protect vulnerable or incapacitated principals against financial abuse" while preserving "the self-determination rights of principals." *Ibru*, 239 Md. App. at 44; UPOAA § 116 cmt. background (2006). With respect to the latter objective, UPOAA § 116 requires courts to dismiss a petition upon the principal's motion "unless the court finds that the principal lacks the capacity to revoke the agent's authority." UPOAA § 116(b). Further, the drafters emphasized that UPOAA § 116 acts as "a check-and-balance on § 114(h)," which comparatively provides that only a narrow class of persons may request an accounting from an agent-in-fact of transactions conducted on the principal's behalf. UPOAA § 116 cmt. background; ET § 17-102(a) (adopting verbatim UPOAA § 114(h)). As a result, UPOAA § 116 "provides what, in many circumstances, may be the only means *to detect and stop agent abuse*." UPOAA § 116 cmt. background (emphasis added).

Extrapolating from these stated goals—which we have previously attributed in *Ibru* to ET § 17-103 as the verbatim corollary to UPOAA § 116—we perceive that the provision

21

was intended to address a very specific situation: an incapacitated principal standing at the mercy of a rogue attorney-in-fact who has actually abused their fiduciary position. If the overarching purpose of UPOAA § 116 is to serve as "a means to detect and stop agent abuse," then a petition must be filed in the context of a dispute concerning abuses of power by the attorney-in-fact while the principal is incapacitated. After all, one cannot *detect* or *stop* agent abuse when it has not yet occurred.

Considering the foregoing precepts, we hold that Amy could qualify as a proper party to bring a claim under ET § 17-103(a)(4) insofar as she is Andrea's descendant, but because her complaint fails to allege any misuse or abuse of power by Lisa, Amy is "not entitled to invoke the judicial process in [this] particular instance" under ET § 17-103(a)(4). *Bank of N.Y. Mellon v. Georg*, 456 Md. 616, 657 (2017) ("'[o]ne requirement of justiciability is that the plaintiff have standing in the sense that the person is entitled to invoke the judicial process in a particular instance.'") (quoting *Adams v. Manown*, 328 Md. 463, 480 (1992)); *see also State Ctr.*, 438 Md. at 502 ("the appellate courts in Maryland have adopted the 'cause of action' approach, which groups the traditionally distinct concepts of standing and cause of action into a single analytical construct[.]").

Amy does not argue, nor does the record suggest, that Lisa committed any abuse of her powers as Andrea's agent-in-fact pursuant to Andrea's powers of attorney. As a result, the circuit court did not err in dismissing Amy's freestanding undue influence challenge to Andrea's powers of attorney due to lack of standing because Amy did not plead facts sufficient to invoke ET § 17-103 in this particular instance.

22

### D. Failure to State a Claim

Amy's failure to state a cause of action and her lack of standing are fundamental and overlapping defects in this case. We affirm the court's determination that Amy failed to state a cognizable claim for relief based on her bald allegations of undue influence that fell short of invoking a recognizable cause of action.

Undue influence "amounts to physical or moral coercion that forces a [person] to follow another's judgment instead of his own." *Zook v. Pesce*, 438 Md. 232, 248 (2014). In the context of a will contest, the Court of Appeals has identified seven factors to examine in determining the existence of undue influence upon a testator: (1) the benefactor and beneficiary are involved in a relationship of confidence and trust; (2) the will contains substantial benefit to the beneficiary; (3) the beneficiary caused or assisted in effecting execution of will; (4) there was an opportunity to exert influence; (5) the will contains an unnatural disposition; (6) the bequests constitute a change from a former will; and (7) the testator was highly susceptible to the undue influence. *Moore v. Smith*, 321 Md. 347, 354 (1990) (citations omitted). The plaintiff "need not prove the presence of all seven of these factors, but the first and seventh factors (relationship of confidence and trust, and high susceptibility to undue influence) do appear to be necessary conditions for a finding of undue influence." *Green v. McClintock*, 218 Md. App. 336, 369 (2014), *cert denied*, 440 Md. 462 (2014) (cleaned up).

The plaintiff's quantum of proof also varies dramatically depending upon the nature of the challenged transaction. *See Upman v. Clarke*, 359 Md. 32, 42-44 (2000). If the issue concerns an *inter vivos* gift, the burden of proof shifts to the defendant upon a

showing that the defendant and the donor were in a relationship of confidence and trust. *Id.* at 42. Accordingly, once a confidential relationship is established, the plaintiff need not even show the actual exercise of undue influence. *Id.* Rather, the defendant has the burden of showing that "the transfer of the property was the deliberate and voluntary act of the grantor and that the transaction was fair, proper and reasonable under the circumstances." *Id.* at 42-43 (quoting *Sanders v. Sanders*, 261 Md. 268, 276-77 (1971)). As a result, when the donee in a confidential relationship "exerts *any* influence on [the donor] to obtain an *inter vivos* transfer of the person's property, for less than full value, that influence is regarded, at least presumptively, as undue and requires an explanation." *Id.* at 44 (emphasis in original).

By comparison, for a testamentary gift the plaintiff maintains a heavy burden of proof to set aside a will or revocable trust. Indeed, the Court of Appeals has observed that:

> undue influence which will avoid a will must be unlawful on account of the manner and motive of its exertion, and must be exerted to such a degree as to amount to force or coercion, so that free agency of the testator is destroyed. The proof must be satisfactory that the will was obtained by this coercion ... or by importunities which could not be resisted, so that the motive for the execution was tantamount to force or fear. Mere suspicion that a will has been procured by undue influence, or that a person had the "power unduly to overbear the will of the testator" is not enough. It must appear that the power was actually exercised, and that its exercise produced the will.

*Upman*, 359 Md. at 43 (quoting *Koppal v. Soules*, 189 Md. 346, 351 (1947)). Ultimately, however, the test for undue influence in setting aside a will maintains some flexibility because "the quantum of proof necessary to establish undue influence varies according to the susceptibility of the testator." *Green*, 218 Md. App. at 368 (quoting *Moore v. Smith*, 321 Md. 347, 360 (1990)).

24

With these principles in mind we return to the present case and quickly dispose of Amy's claim that the circuit court erred in dismissing her allegations of undue influence with respect to Andrea's testamentary documents. Amy's bald allegations fail to state a claim even under a loose application of the *Moore* factors—mostly because her claim is not ripe given that Andrea is still alive and this is not a will contest. As we said above, once Andrea passes away, Amy will have standing to challenge the testamentary documents, assuming she is able to state a claim.[12]

Amy's arguments regarding the powers of attorney fall equally wide of the law for several reasons. First, we do not agree with Amy's contention that the powers of attorney are *inter vivos* gifts. It is indisputable that a power of attorney is an *inter vivos* instrument, but it is a stretch, at the very least, to construe it as an *inter vivos* gift. A power of attorney, at its core, is a contract of agency which creates a fiduciary relationship. *King v. Bankerd*, 303 Md. 98, 105 (1985). It does not effectuate any gratuitous transfer of any property, though the ability to do so on the principal's behalf can be part of the agent's authority when so provided.

Second, Amy structured her Second Amended Petition and arguments on appeal to set aside the powers of attorney around the *Moore* framework, but the *Moore* seven-factor

---

[12] The circuit court's dismissal in this case does not bar Amy from bringing a subsequent action once Andrea has passed away. We note that the circuit court did not specify in its November 2, 2021, order that Amy's undue influence challenge to Andrea's wills and revocable trust agreements was dismissed with prejudice. Moreover, as the Court of Appeals has stated, a dismissal "based merely on formal or technical defects and raising only a question of pleading or want of jurisdiction" is not considered a judgment on the merits for purposes of *res judicata*. *Cassidy v. Bd. Educ. Prince George's Cnty.*, 316 Md. 50, 58 (1989) (quoting *Moodhe v. Schenker*, 176 Md. 259, 267 (1939)).

25

test has, at best, wooden application as applied to a power of attorney. Amy makes no effort to address this problem and simply makes the incorrect contention that there was an *inter vivos* gift in this case that shifted the burden of proof to Lisa. That is indisputably incorrect. Even if we apply the ill-fitting *Moore* framework, Amy's Second Amended Petition falls short under the *Moore* factors. For example, with respect to the confidential relationship factor, Amy simply stated that "the benefactor, Andrea S. Jacobson, and the beneficiary, Lisa Allyn Jacobson are involved and have been involved in a relationship of confidence and trust" because they were sisters and Lisa was appointed as Andrea's agent-in-fact. Those allegations were insufficient considering that (1) the premise that Andrea and Lisa "are involved and have been involved in a relationship of confidence and trust" simply stated a legal conclusion; (2) the fact that Andrea and Lisa are sisters does not demonstrate the existence of a confidential relationship because familial ties standing alone do not suffice, *see Upman*, 359 Md. at 42; and (3) Amy could not bootstrap her way to a confidential relationship by pointing to a fiduciary association created by the very document that she is challenging. With respect to the remaining factors, the deficiencies in Amy's Second Amended Petition turn on the fact that the allegations, if relevant, were entirely conclusory.

In sum, we hold that the circuit court did not err in dismissing Count IV of Amy's Second Amended Petition for failure to state a claim upon which relief can be granted. Amy relied entirely on conclusory allegations and failed to articulate a recognizable cause of action. As a result, because those legal conclusions and unsupported bald assertions were not sufficient to state a claim, dismissal was proper.

## II.

## Motion for Reconsideration

### A. *Parties' Contentions*

Although Amy again declines to elaborate, the thrust of her argument appears to be that the circuit court abused its discretion in denying her motion to reconsider because it proceeded upon an error of law.

Andrea and Lisa counter that the circuit court properly denied Amy's motion for reconsideration because Amy failed to identify any legal error or specify any grounds for reconsideration. Even if that were not the case, Andrea and Lisa contend that the circuit court could not have abused its discretion in denying the motion because Amy lacked standing and there was no legal error to correct.

### B. *The Motion to Reconsider Was Properly Denied*

Under Md. Rule 2-534, a party may file a motion to reconsider within ten days after the entry of judgment. Md. Rule 2-534. We review a circuit court's decision to deny a motion to reconsider for abuse of discretion. *Wilson-X v. Dep't Hum. Res.*, 403 Md. 667, 674-75 (2008). An abuse of discretion occurs when "no reasonable person would take the view adopted by the [circuit] court," or "when the court acts without reference to any guiding rules or principles." *Id.* at 677 (cleaned up). However, a "court's discretion is always tempered by the requirement that the court correctly apply the law applicable to the case." *Schlotzhauer v. Morton*, 224 Md. App. 72, 84 (2015) (quoting *Arrington v. State*, 411 Md. 524, 552 (2009)). Indeed, the Court of Appeals has emphasized that "an error in applying the law can constitute an abuse of discretion, even in the context of a motion for

27

reconsideration made pursuant to Maryland Rule 2-534." *Morton v. Schlotzhauer*, 449 Md. 217, 232 (2016). Thus, if a trial court "fails to rectify a judgment based on a misunderstanding of the law applicable to the case or the procedural posture of the case, especially when that error is brought to its attention in a timely manner, [it] abuses its discretion." *Id.*

We conclude that, even under more searching review, the circuit court acted properly in denying Amy's motion for reconsideration. At a minimum, Amy was required to bring to the circuit court's attention the particular legal errors that the court was duty bound to rectify. For example, in *Morton*, the trial court abused its discretion in denying the plaintiff's motion to reconsider when she specifically brought to the court's attention that she had gained standing due to the re-vesting of her claim. *Morton*, 449 Md. at 234. Similarly, in *Williams v. Housing Authority of Baltimore City*, the trial court abused its discretion in denying a motion to reconsider after the court was "reliably informed" that its ruling was based on a clear error of law and that another party had not received proper notice of a hearing. 361 Md. 143, 153 (2000); *see also Garliss v. Key Fed. Sav. Bank*, 97 Md. App. 96, 105 (1993) (finding abuse of discretion in denying motion to reconsider after court was informed that movant was entitled to a credit against judgment). Here, Amy simply did not carry her burden of demonstrating to the circuit court that it had misapplied the law.

In her motion to reconsider, Amy quoted at length from two undue influence cases, *Moore v. Smith*, 321 Md. 347 (1990), and *Figgins v. Cochrane*, 403 Md. 392 (2008), without explaining how those cases connected to the facts at hand or established that the

28

court erred in dismissing her Second Amended Petition. Moreover, even if the circuit court were able to extrapolate her argument, the cases cited by Amy were largely inapposite and failed to address her standing to challenge Andrea's estate planning documents. In *Moore*, for example, the Court of Appeals established the seven-factor test for undue influence in will contests and observed that because undue influence can often be difficult to detect, it may be proven by circumstantial evidence. *Moore*, 321 Md. at 354. Amy's reliance on *Moore* was unavailing for many reasons, including that her Petition did not concern a post-mortem dispute, and, unlike in *Moore*, her Petition was not dismissed due to a lack of direct evidence, but because of a wholesale failure of proof and reliance on conclusory allegations.

Likewise, in *Figgins*, the Court of Appeals found that the existence of a confidential relationship in the context of an *inter vivos* transfer of property shifted the burden of proof to the agent to demonstrate the fairness of the transaction. *Figgins*, 403 Md. at 414. As Andrea and Lisa ably point out, there was no *inter vivos* gift in this case. Amy's reliance on *Figgins* was thus misplaced, especially considering that she would have retained the burden of proof on her undue influence challenge to Andrea's will and revocable trust even if she could prove a confidential relationship between Andrea and Lisa. *See Upman,* 359 Md. at 43 (holding that the burden of proof on undue influence remains with caveator of a will); *Zook v. Pesce*, 438 Md. 232, 247-48, 250 (2014) (concluding that the burden of proof on an undue influence challenge to decedent's living trust remains with the plaintiff even where a confidential relationship exists).

At bottom, the circuit court did not abuse its discretion in denying Amy's motion to reconsider its dismissal of her Second Amended Petition. Amy was required to timely bring some legal error to the court's attention in her motion to reconsider. She did not. Instead, Amy simply recited *Moore* and *Figgins* without any elaboration as to how those holdings established an error that the circuit court was required to correct. In fact, Amy failed to even address standing—the primary rationale for dismissal—in any appreciable way. As a result, the circuit court did not abuse its discretion in denying her motion to reconsider because Amy's deficient motion did not bring the court's attention to any errors that it was duty bound to rectify.

## III.

## Post Judgment Motions

### A. *Parties' Contentions*

Amy contends that the circuit court abused its discretion in denying her leave to amend because Rule 2-341(A) permits amendments without leave of court by the date set forth in a scheduling order or at least 30 days before trial. Amy avers that her Third Amended Petition thus should have been permitted because "there is no scheduling order" and "the Third Amended Petition added new facts in Paragraph 47 through 65 and a new Count V[.]" Finally, Amy posits that the new count for declaratory relief justified leave to amend because it set out new evidence "detailing the non-genuine signatures" on Andrea's estate planning documents.

In response, Andrea and Lisa point out that the Second Amended Petition had already been dismissed in its entirety before Amy filed the Third Amended Petition. They

point out that although leave to amend is freely granted before dismissal on the merits, that is not the case after judgment. Further, Andrea and Lisa posit that the amendment would have been futile because the declaratory relief requested by Amy was not ripe for review and her claims were irreparably flawed.

## B. *Leave to Amend Was Properly Denied*

The decision to grant leave to amend pleadings is committed to the sound discretion of the circuit court. *Bord v. Balt. Cnty.*, 220 Md. App. 529, 565 (2014). Under the Maryland Rules, an amended pleading may be filed either with or without leave of court depending upon the procedural posture of a case. Pursuant to Md. Rule 2-341(a), a party may file an amended pleading without leave of court "by the date set forth in a scheduling order or, if there is no scheduling order, no later than 30 days before a scheduled trial date." Md. Rule 2-341(a). Thereafter, any other party to the action may file a motion to strike "setting forth reasons why the court should not allow the amendment" within 15 days after service of the amended pleading. Md. Rule 2-341(a). Conversely, under Md. Rule 2-341(b), a party "may file an amendment to a pleading after the dates set forth in [Rule 2-341(a)] only with leave of court." Md. Rule 2-341(b). Rule 2-341(b), in turn, works in conjunction with Md. Rule 2-322(c), which provides that after a claim has been dismissed, "an amended complaint may be filed only if the court ***expressly grants leave to amend.***" Md. Rule 2-322(c) (emphasis added).

Nevertheless, when leave is requested, it should ordinarily be freely granted "to prevent the substantial justice of a cause from being defeated by formal slips or slight variances." *Prudential Secs., Inc. v. E-Net. Inc.*, 140 Md. App. 194, 232 (2001) (quoting

31

*E.G. Rock, Inc. v. Danly*, 98 Md. App. 411, 428 (1993)). Under Md. Rule 2-341(c), amendments to pleadings "shall be freely allowed when justice so permits." Md. Rule 2-341(c). Accordingly, an amendment should be permitted "so long as the operative factual pattern remains essentially the same, and no new cause of action is stated invoking different legal principles." *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 248 (1996) (quoting *Gensler v. Korb Roofers, Inc.*, 37 Md. App. 538, 543 (1977)). As a result, "leave to amend complaints should be granted freely to serve the ends of justice" and "it is the rare situation in which a court should not grant leave to amend." *RRC Northeast*, 413 Md. at 673.

Nonetheless, an amendment "should not be allowed if it would result in prejudice to the opposing party or undue delay, such as where amendment would be futile because the claim is flawed irreparably." *Id.* at 673-74. Prejudice is especially likely to result when a party attempts to add claims late in the litigation. For example, in *E.G. Rock*, we found no abuse of discretion when the trial court denied the defendant leave to amend to set out a counterclaim after the close of evidence at trial. *E.G. Rock*, 98 Md. App. at 429. Similarly, in *Mattvidi Assocs. Ltd. P'ship v. NationsBank of Va., N.A.*, we affirmed the denial of leave to amend on the day of trial as any such amendment would have prejudiced the defendant absent "the opportunity for additional discovery" and "necessary additional discovery would have delayed the trial, and, of course, resulted in much more complicated litigation." 100 Md. App. 71, 84-85 (1994).

Especially after a claim has already been resolved, the plaintiff's ability to amend thereafter is significantly curtailed. *See RRC Northeast*, 413 Md. at 674-75. In *RRC*

*Northeast*, the Court of Appeals found no abuse of discretion when the circuit court denied the plaintiff leave to amend after the plaintiff failed to identify any terms in the parties' contract "that, if pled, would have improved the twice-dismissed breach of contract claims by answering the key question" of which sublease term the defendant had breached. *Id.* at 674. As a result, because of the plaintiff's "continued inability to proffer facts that would improve its complaint," the circuit court properly denied leave to amend since "any such further amendment would have been futile and would have resulted in undue delay." *Id.* at 674-75; *see also Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 29 (2005) (affirming circuit court's striking of amended complaint after claims were dismissed and plaintiff failed to produce evidence that personal jurisdiction existed over the defendants).

Returning to the case before us, two points are immediately clear. First, Amy's contention that she had leave to amend under Rule 2-341(A) because there was no scheduling order is completely without merit. As Andrea and Lisa correctly observe, Amy ignores the fact that her claims had been dismissed before she sought leave to amend. Thus, as provided by Rule 2-322(c), an amended complaint could only have been filed if the court expressly granted leave to amend. Second, to the extent that Amy sought leave to amend to reprise her undue influence challenge to Andrea's estate planning documents, the circuit court did not abuse its discretion in denying her motion. As in *Beyond Systems*, such an amendment would have been futile because Amy still lacked standing to bring those claims even with her additional allegations of forgery and request for declaratory relief. When Amy filed her Third Amended Petition, Andrea was still alive and no abuses of Lisa's

33

authority as Andrea's agent had come to light. In essence, the status quo had not changed in any way. Accordingly, we discern no abuse of discretion in the circuit court's decision denying leave to amend when Amy's claims remained non-justiciable, thus rendering any amendment futile.

### C. *Propriety of Striking an Amended Pleading Following Dismissal*

While an amended complaint can in some circumstances be filed following the dismissal of a case, the Maryland Rules create a specific procedure for doing so. As provided by Md. Rule 2-322(c):

> If the court orders dismissal, an amended complaint may be filed only if the court expressly grants leave to amend. The amended complaint shall be filed within 30 days after entry of the order or within such other time as the court may fix. If leave to amend is granted and the plaintiff fails to file an amended complaint within the time prescribed, the court, on motion, may enter an order dismissing the action.

In *Bacon v. Arey*, we clarified that the grant of leave to amend, as clearly contemplated by Rule 2-322(c), functions as a precondition to filing an amended complaint. 203 Md. App. 606, 670-71 (2012). In *Bacon*, while the case was on remand from this court following the dismissal of the plaintiff's third amended complaint, the plaintiff filed, without express leave, a fourth amended complaint. *Id.* at 670. We found that the plaintiff was without the power to do so under Rule 2-322(c) and that the circuit court properly struck the fourth amended complaint as a result. *Id.* at 670-71. As we emphasized, the plaintiff "must seek" and presumably be granted "leave to amend *before* filing another complaint." *Id.* at 671 (emphasis added).

34

We review the circuit court's grant of a motion to strike for abuse of discretion. *Id.* at 667. In the present case, the logic of *Bacon* easily controls. Amy was required to have obtained leave *before* filing her Third Amended Petition. As a result, as in *Bacon*, the Third Amended Petition was not filed in compliance with Rule 2-322(c) and the circuit court did not abuse its discretion in granting Andrea and Lisa's motion to strike the Third Amended Petition in its entirety. Nor, as Amy contends, was the circuit court required to provide a "written declaration of the parties' rights" in striking a pleading that was not properly before it. It is true that a declaratory judgment must be rendered when a "controversy is appropriate for resolution by declaratory judgment." *Harford Mut. Ins. Co. v. Woodfin Equities Corp.*, 344 Md. 399, 414 (1997). But that is only the case when the court is actually addressing the merits of a properly justiciable controversy, which was not the case here. We hold that the circuit court did not abuse its discretion in striking an improper pleading without expressing any opinion as to the merits of the pleading, including Amy's declaratory claims.

## IV.

### Denial of the Motion for Sanctions

#### A. *Parties' Contentions*

Andrea and Lisa argue that the circuit court abused its discretion in failing to impose sanctions on Amy due to her filing of the November 3 motion to reconsider without substantial justification. They point out that Amy failed to comply with Maryland Rule 2-311(c) by not stating with particularity the grounds for reconsideration. Instead, they stress, Amy simply "repeated two long quotations from undue influence cases covering

four of the documents' five pages, without reference to the rule or the standard relevant to leave to amend or for reconsideration."

Amy responds, again by rote recitation of authority without elaboration, that the circuit court did not abuse its discretion. Extrapolating from the passages quoted from various cases and Rules Commentary in her briefing, Amy appears to argue that (1) she had a reasonable basis for bringing the undue influence action and (2) the circuit court could have simply decided not to impose sanctions in its discretion.[13]

### B. The Circuit Court Did Not Abuse Its Discretion

Maryland Rule 1-341 permits an award of attorneys' fees when an action was brought by the offending party in bad faith or without substantial justification. Md. Rule 1-341; *Christian v. Maternal-Fetal Med. Assocs. Md., LLC*, 459 Md. 1, 18 (2018). The rule primarily functions as a deterrent against abusive litigation and is "a mechanism to place 'the wronged party in the same position as if the offending conduct had not occurred.'" *Id.* at 19 (quoting *Major v. First Va. Bank-Cent. Md.*, 97 Md. App. 520, 530 (1994)). Because of that narrow purpose, an award of attorneys' fees under Rule 1-341 is considered "an 'extraordinary remedy' which should be exercised only in rare and exceptional cases." *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 105 (1999) (quoting *Black v. Fox Hills N. Cmty. Ass'n, Inc.*, 90 Md. App. 75, 83 (1992)).

___

[13] Amy also attempts to justify several other actions taken in this case which are outside the scope of this appeal. To be fair, these issues were cited by Andrea and Lisa in their brief as evidence of Amy's bad faith throughout the litigation. Regardless, because these issues were not raised in the original motion for sanctions and were not passed on by the circuit court, they are not properly before this Court on appeal. Md. Rule 8-131(a); *State v. Bell*, 334 Md. 178, 188 (1994).

To award attorneys' fees under Rule 1-341, the circuit court must wind its way through a two-step process. First, the court must make a factual finding as to whether the challenged action was brought in bad faith or without substantial justification. *Christian*, 459 Md. at 20-21. We review the court's factual finding for clear error. *Legal Aid Bureau, Inc. v. Bishop's Garth Assocs. Ltd. P'ship*, 75 Md. App. 214, 220-21 (1988).

Second, the court must, within its discretion, "separately find that the acts committed in bad faith or without substantial justification warrant the assessment of attorney's fees." *Christian*, 459 Md. at 21. Nonetheless, "even if the circuit court determines that a party has acted in bad faith or without substantial justification," it can "***decline to impose sanctions, in the exercise of its discretion***." *Blitz v. Beth Isaac Adas Israel Congregation*, 115 Md. App. 460, 489 (1997), *rev'd on other grounds*, 352 Md. 31 (1998) (emphasis added); *Blanton v. Equitable Bank Nat'l Ass'n*, 61 Md. App. 158, 166 (1985). Indeed, the circuit court's judgment call will not be disturbed unless it is "so far off the mark as to amount to an abuse of discretion." *Century I Condo. Ass'n, Inc. v. Plaza Condo. Joint Venture*, 64 Md. App. 107, 120 (1985).

On this record, we discern no abuse of discretion in the circuit court's denial of the joint motion for sanctions. Even if Andrea and Lisa could show that Amy brought her November 3 motion to reconsider in bad faith or without substantial justification, the circuit court was well within its discretion to deny an award of sanctions as a matter of judicial economy. Though the circuit court did not go into detail about why it denied the joint motion for sanctions, we observe that the court could have easily concluded that granting the motion would have only spawned further litigation. Instead, the circuit court—

37

justifiably, in our view—simply allowed this case to mercifully come to an end after it struck Amy's Third Amended Petition.  Even if Amy's motion to reconsider was deficient, we hold that the circuit court did not abuse its discretion in denying the imposition of sanctions.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1741s21cn.pdf